[Cite as *Dana Ltd. v. TACS Automation, L.L.C.*, 2021-Ohio-2555.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Dana Limited | Court of Appeals No. L-19-1203 |
| Appellee | Trial Court No. CI0201801822 |
| v. | |
| TACS Automation, LLC | **DECISION AND JUDGMENT** |
| Appellant | Decided: July 23, 2021 |

* * * * *

Thomas G. Cardelli, for appellee.

Scott A. Ciolek, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from an August 20, 2019 judgment of the Lucas County Court of Common Pleas, awarding appellee, Dana Limited ("Dana"), $630,534.13 in damages against appellant, TACS Automation, LLC ("TACS"), following a July 26, 2019 breach of contract jury verdict in favor of Dana.

{¶ 2} The parties are both commercial business entities engaged in operations related to the domestic automobile manufacturing industry. For the reasons set forth more fully below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, TACS, sets forth the following three (3) assignments of error:

**FIRST ASSIGNMENT OF ERROR**: THE LOWER COURT ERRED IN GRANTING DANA'S MOTION FOR A DIRECTED VERDICT AS TO THE [] CONTRACT.

**SECOND ASSIGNMENT OF ERROR**: THE LOWER COURT ERRED IN GRANTING DANA'S MOTION FOR A DIRECTED VERDICT AS TO THE NO ORAL OR WRITTEN MODIFICATION CLAUSE.

**THIRD ASSIGNMENT OF ERROR**: THE LOWER COURT ERRED IN LIMITING THE EVIDENCE [THAT] TACS COULD PRESENT REGARDING ADEQUATE ASSURANCES.

{¶ 4} The following undisputed facts are relevant to this appeal. This case arises from a failed contractual business relationship between the parties occurring in 2016-2017.

{¶ 5} The business involvement between the parties arose from the pre-planned January, 2018 launch of a redesigned Dodge Ram pick-up truck model by Chrysler. The redesigned Ram necessitated various facility modifications at a Dana driveshaft facility

2.

located in Auburn Hills, Michigan. The facility serves as one of the parts suppliers to Chrysler in the direct supply chain engaged in the manufacture of the Ram pickup truck.

{¶ 6} As an established, ongoing supplier to Chrysler, Dana agreed to timely undertake all requisite modifications to its Auburn Hills driveshaft facility in order to accommodate the new vehicle design specifications. Dana also agreed to do so in conformity with Chrysler's January, 2018 product launch date.

{¶ 7} TACS is engaged in the business of performing the type of facility modifications needed by Dana to comply with its obligations connected to the redesigned Chrysler product.

{¶ 8} Accordingly, on August 23, 2016, Dana executed a contract with TACS entitled, "Equipment Purchase Terms and Conditions" (hereinafter "terms").

{¶ 9} The mutually agreed upon purpose of the terms, which served as the base contract governing the relationship between the parties, was for TACS to provide various machinery tools and related services to Dana to enable the timely modifications of the Auburn Hills facility for its role in the manufacture of the redesigned 2018 Ram pickup truck. The terms contract was executed by TACS' principal/owner, Michael Scott.

{¶ 10} Paragraph 2 of the terms contract defined separate documents, known as "purchase agreements", which would subsequently be issued between the parties. It established that, "From time to time, as agreed to by the parties, seller [TACS] will furnish to purchaser [Dana], and purchaser will purchase from seller, the machine tools and associated services described on purchase term sheets."

3.

{¶ 11} In the course of their business relationship underlying this appeal, the parties agreed to a total of four of the above-described purchase agreements, which were likewise signed by TACS' principal/owner, Michael Scott.

{¶ 12} In addition to the above-discussed documents, the contractual relationship between the parties also entailed documents referred to as purchase term sheets. Purchase term sheets are the above-defined purchase agreements, prior to their execution.

{¶ 13} Lastly, documents referred to as "purchase orders" were also created. Purchase orders are administrative documents created by Dana to enable vendors, such as TACS, to invoice Dana in order to be compensated for the successful provision of products and services to Dana.

{¶ 14} Unfortunately, as time progressed following the launch of the contractual business relationship between the parties, concerns mounted amongst Dana officials involved in the project that worsening performance and timeliness deficiencies by TACS were becoming so problematic that it would preclude Dana from timely fulfilling its obligations to Chrysler.

{¶ 15} In response to these circumstances, on November 15, 2017, Dana issued a written demand for performance to TACS. Nevertheless, TACS' performance and timeliness shortcomings persisted. Dana's ability to have its facility ready for the looming Chrysler product launch remained compromised.

{¶ 16} Accordingly, on December 20, 2017, Dana notified TACS in writing of the termination of the parties' contractual business relationship.

4.

{¶ 17} In order to adhere to its obligations to Chrysler, Dana was required to rapidly complete the project utilizing alternative vendors and personnel. This resulted in Dana incurring considerable additional expenses.

{¶ 18} On March 16, 2018, Dana filed suit against TACS for breach of contract. TACS answered and filed counterclaims. On July 23, 2020, following several years of intensive commercial litigation activity between the parties, the matter proceeded to a four-day jury trial.

{¶ 19} Dana first presented testimony from key witness Dale Carson, Dana's director of platform launches. Carson testified that one of his professional responsibilities for Dana was to perform audits of the readiness of Dana facilities to comply with the requirements and deadlines associated with new product launches related to Dana customers, such as Chrysler.

{¶ 20} Carson testified that pursuant to his job duties and responsibilities for Dana, he became aware near the end of 2017 that TACS' inadequate performance at the Auburn Hills facility was jeopardizing Dana's ability to comply with Chrysler's January, 2018 Ram launch deadline.

{¶ 21} Accordingly, Carson met with Scott in person to review the ongoing issues and concerns. Carson conveyed to Scott the urgency of the issues being remediated, and the ramifications of TACS' failure to do so.

{¶ 22} Despite multiple meetings between Carson and Scott, and despite subsequent correspondence from the Dana legal department to TACS demanding

5.

adequate assurances of the ability to timely meet the contractual obligations, TACS failed to rectify the situation, resulting in Dana issuing the December 20, 2017 written notification to TACS of the termination of their contractual business relationship.

{¶ 23} Dana's next witness was Brad McArthur, their global manager of capital purchasing. McArthur testified that whenever a contractor is utilized by Dana who is expected to perform in excess of $100,000 in work for Dana, as was the case with TACS, a terms agreement serving as the base contract is executed between the parties.

{¶ 24} McArthur further testified that all such terms agreements entered into by Dana specify that all modifications to the agreement must be done in writing, and must be executed by authorized representatives of both parties, in order to take effect.

{¶ 25} As applied to this case, all four purchase agreements arising from the original terms agreement were executed by both parties. No objections to the agreements were raised. No contractual modifications occurred.

{¶ 26} Dana next presented the testimony of their engineering manager, Sasa Bjelica. Bjelica testified that following the contract termination, he secured all of the requisite change orders and purchase orders for the alternative vendors who were brought in to complete the project before the Chrysler deadline.

{¶ 27} Dale Bales, the Dana operations manager responsible for working with and assisting TACS at the Auburn Hills facility in the course of the project, next testified. Bales gave detailed testimony regarding the persistent difficulty in communicating with Scott, in getting cooperation from Scott in being present in person at the plant as needed,

6.

and in getting Scott to facilitate any of the adjustments necessary to successfully get the project back on track once issues had arisen.

{¶ 28} Bales testified that in his 25-year career, this case was the first time that he was forced to terminate a supplier contract due to unresolved performance and timeliness issues jeopardizing a successful project completion.

{¶ 29} Bales further testified that despite his multiple in-person meetings with Scott, TACS continued to miss deadlines. Bales ultimately recognized that termination with TACS had become necessary. The continuing impasse would not only adversely affect Dana, but would also impact the Chrysler facilities involved in manufacturing the Ram.

{¶ 30} At the conclusion of presenting its case, Dana moved the trial court for directed verdict on various matters. Dana sought a directed verdict ruling that the terms agreement and the four purchase agreements constituted the only written contracts between the parties. The trial court did not concur with Dana.

{¶ 31} The trial court held in pertinent part, "[T]his court based on that will find that all the terms of the parties contract, as contained in equipment purchase terms and conditions, purchase agreements, *and purchase orders are part of the contract* and the contract does exist." (Emphasis added).

{¶ 32} Accordingly, the trial court ruled favorably to TACS, over the opposition of Dana, that the purchase orders were also part of the contracts to be considered in resolving this case.

7.

{¶ 33} The trial court also denied Dana's motion for a directed verdict that TACS had breached the contract. It further denied Dana's motion for a directed verdict on TACS' counterclaim.

{¶ 34} With respect to any alleged modifications of the contracts, while the trial court affirmed that the plain language of the contract necessitated that modifications be written and executed by authorized persons in order to be effectuated, the trial court clearly acknowledged the possibility that TACS could submit evidence demonstrating contract modifications during the pending presentation of their evidence to the trial court.

{¶ 35} The trial court held in relevant part, "So as to modifications of the contract or arguments that there was modifications in the contract, unless that has been or will be submitted, *and at this point it has not* * * * then any submission of any modifications will not pass directed verdict." (Emphasis added).

{¶ 36} TACS next presented their evidence to the trial court. Scott, as principal/owner of TACS, testified chiefly on the issue of his provision of what he deemed to be adequate assurances of performance to Dana. Scott provided scant testimony related to the bulk of the issues raised on appeal.

{¶ 37} TACS also presented the testimony of Thomas Rhodes, a TACS subcontractor who worked on the Dana project.

{¶ 38} Rhodes unpersuasively claimed that various work performed by alternative contractors, after Dana terminated its contractual relationship with TACS, was not work

8.

required by the contract. Rhodes incongruously conceded to his lack of actual knowledge on the scope of the work that TACS had contractually agreed to perform for Dana.

{¶ 39} TACS also provided the testimony of several former Dana employees relevant to the disputed damages claims.

{¶ 40} At the conclusion of TACS' presentation of its case, Dana again moved for a directed verdict in its favor on breach of contract. The motion was again denied, enabling submission to the jury.

{¶ 41} Dana also moved for a directed verdict on TACS' counterclaim of promissory estoppel. The trial court held in relevant part, "It is well-settled that promissory estoppel is not available as a remedy when a legal relationship between the parties is, in fact, governed by a valid and enforceable contract, and, as such, it should be this court should grant the plaintiff's [Dana's] motion for directed verdict as to the counterclaim."

{¶ 42} TACS did not object to, or raise any issue related to, the trial court's disposition and dismissal of the promissory estoppel counterclaim. The balance of the case was then submitted to the jury.

{¶ 43} On July 26, 2020, the jury held that Dana had successfully proven breach of contract by TACS. This appeal ensued.

{¶ 44} We note that appellant's opposition to the trial court's contract-related directed verdict rulings is curious given that the trial court denied both of Dana's motions for directed verdict against TACS on the issue of breach of contract.

9.

{¶ 45} In addition, the trial court's directed verdict rulings sided with TACS on the issue of whether the purchase order documents should be considered part of the contractual documents between the parties.

{¶ 46} We further note that TACS raised no issues or objections before the trial court in relation to the now disputed directed verdict rulings. This is unsurprising given that the rulings were predominantly favorable to TACS.

{¶ 47} The following legal standards govern our consideration and disposition of this matter.

{¶ 48} It is well-established that the standard of appellate review applied to disputed directed verdict decisions is de novo. *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 509 N.E.2d 399 (1987).

{¶ 49} This court construes the evidence presented most strongly in favor of the nonmoving party and, thereby, determines whether reasonable minds could only find favorably to the nonmoving party. This court assumes the truth of the evidence supporting the nonmoving party, and gives that party the benefit of all reasonable inferences. *Fifth Third Bank v. Gen. Bag Corp.*, 8th Dist. Cuyahoga No. 92793, 2010-Ohio-2086, ¶ 30.

{¶ 50} In conjunction with the above, we note that arguments raised for the first time on appeal are generally barred. As set forth at ¶ 17 in *Cawley JV, LLC v. Wall St. Recycling, LLC*, 35 N.E.3d 30, 2015-Ohio-1846 (8th Dist.), "*Such arguments are barred by the doctrine of waiver for failure to raise these arguments before the trial court. It is*

10.

well-established that a party cannot raise any new issues or legal theories for the first time on appeal * * * *Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process.*" (Emphasis added).

{¶ 51} Lastly, with respect to the contractual roots of this case, as set forth at ¶ 11 in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 2003-Ohio-5849, "When confronted with an issue of contract interpretation, the role of the court is to give effect to the intent of the parties to the agreement * * * *we look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents.*" (Emphasis added).

{¶ 52} In the first assignment of error, appellant alleges that the trial court erred in connection to the directed verdict contract ruling. We do not concur.

{¶ 53} Although TACS asserts in support of the first assignment that the trial court should have ruled that each purchase agreement was a separate contract, and that the Dana purchase orders were not governed by the terms base agreement, there are no conclusions or statements of the trial court reflected in the record that would have negated TACS ability to pursue and raise such arguments and positions before the trial court. TACS elected not to do so.

{¶ 54} The trial court did not rule the purchase orders were necessarily governed by the terms base agreement, as suggested by appellant in an apparent belief that such a ruling would have negated appellant's counterclaim. However, the trial court made no such ruling.

11.

{¶ 55} In addition, while TACS further asserts that the trial court's contract directed verdict rulings were premature, the record reflects that TACS did not raise or assert the issue of timeliness to the trial court.

{¶ 56} Accordingly, we find that the timeliness contentions set forth in the first assignment of error are rooted in an issue that was not raised to the trial court, and is, thereby, waived for purposes of appeal.

{¶ 57} Upon our de novo review, we find that the balance of contentions in support of the first assignment of error are rooted in conjecture and mistaken interpretation. They are without merit. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 58} In appellant's second assignment of error, appellant similarly maintains that the trial court erred in the contract directed verdict ruling in connection to modifications. We do not concur.

{¶ 59} Appellant perceives that the trial court's directed verdict rulings somehow improperly precluded appellant from presenting evidentiary arguments premised upon claimed oral contractual modifications or upon claimed modifications that were written, but unsigned by a Dana representative.

{¶ 60} The plain meaning of the language utilized in the terms base agreement contract executed between the parties does not bear out appellant's claims.

12.

{¶ 61} Paragraph 35 of the Terms base agreement establishes, "Amendments.  No amendment to these terms or any purchase agreement will be effective *unless it is in writing and executed by the authorized representatives of both parties*."  (Emphasis added).

{¶ 62} The relevant portion of the subject directed verdict ruling held, "So as to modifications of the contract or arguments that there were modifications in the contract, unless that has been or will be submitted * * * that was executed by -- in writing by the authorized representatives of both parties, then any submission of any modification will not pass directed verdict."

{¶ 63} The subject trial court ruling constitutes a true and accurate interpretation of the plain meaning of the relevant contractual language.  Oral contractual modifications are not permitted.  Written contractual modifications must be executed by authorized representatives of both parties in order to take effect.

{¶ 64} If TACS was in possession of evidence in support of contractually compliant modifications to the contract, they could have presented same to the trial court for consideration.  They did not do so.

{¶ 65} We find that the assertions in support of the second assignment of error connected to timeliness are waived on the same basis as was set forth in our response to the first assignment of error.

{¶ 66} With respect to the balance of arguments in support of the second assignment of error, we find them to be without merit.  The disputed trial court directed

13.

verdict ruling is clearly a proper, plain meaning doctrine interpretation of the relevant contract provision on effectuating contract modifications.

{¶ 67} Accordingly, we find appellant's second assignment of error not well-taken.

{¶ 68} In the third assignment of error, appellant maintains that the trial court improperly limited appellant's introduction of evidence related to adequate assurances of performance. We do not concur.

{¶ 69} The record reflects that while the trial court ruled that TACS had not yet submitted evidence establishing a written contract modification properly executed by authorized representatives of both parties, that ruling did not abrogate appellant's ability to present any such evidence to the trial court for consideration and determination.

{¶ 70} Further, appellant raised no issue below connected to the submission of evidence of adequate assurances of performance. As such, the matter is waived for purposes of appeal.

{¶ 71} Accordingly, we find appellant's third assignment of error not well-taken.

{¶ 72} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

14.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
JUDGE

David A. D'Apolito, V.J. _____
CONCUR.

_____
JUDGE

Judge David A. D'Apolito, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.