[Cite as *Estate of Haynes v. Gaines*, 2023-Ohio-208.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

The Estate of Oscar Haynes,
Gwendalyn Haynes Burel,
Administrator

        Appellee

v.

Sharon Gaines

        Appellant

Court of Appeals No. L-22-1093

Trial Court No. CI0202003123

**<u>DECISION AND JUDGMENT</u>**

Decided: January 25, 2023

* * * * *

James Schuller, for appellee.

Lafe Tolliver, for appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} Appellant, Sharon Gaines, appeals the judgment of the Lucas County Court of Common Pleas, granting summary judgment in favor of appellee, Gwendalyn Haynes Burel, as administrator of the estate of Oscar Haynes, thereby imposing a constructive

trust on appellant's bank account and ordering appellant to pay $83,096.80, plus interest, to appellee. Finding no error in the trial court's judgment, we affirm.

## A. Facts and Procedural Background

{¶ 2} On February 28, 2018, Oscar and his wife, Leona, opened a money market checking account at Huntington Bank (the "MMA Account"). According to the personal signature card associated with the MMA Account, the owners of the account are Oscar, Leola, and appellant. The signature card identifies the MMA Account as a "Joint Account with Rights of Survivorship."

{¶ 3} Approximately 19 months later, on September 30, 2019, appellant withdrew $72,096.08 from the MMA Account and deposited the funds into her personal account. Six months after that, on March 25, 2020, appellant withdrew another $11,000 from the MMA Account and deposited the funds into her personal account.

{¶ 4} On September 22, 2020, after learning of the foregoing withdrawals from the MMA Account, Oscar filed his complaint with the trial court, alleging that appellant breached her fiduciary duty and wrongfully converted his property when she withdrew the funds from the MMA Account.[1] In the complaint, Oscar acknowledged that he and Leona made Gaines a co-owner of the MMA Account, but insisted that it was "for the sole purpose of assisting the aged couple in handling their finances and paying Leona's medical bills." Further, Oscar alleged that appellant's fiduciary relationship arose out of

---

[1] Leona died on July 5, 2020.

2.

the authority he and Leona granted appellant when they made her a co-owner of the MMA Account.

{¶ 5} In his complaint, Oscar sought an order from the trial court imposing a constructive trust on the funds appellant removed from the MMA Account, as well as an award of damages for appellant's alleged breach of her fiduciary duties "in an amount equal to the amount wrongfully removed from Plaintiff's MMA account." Additionally, Oscar requested damages in excess of $25,000 for appellant's alleged conversion of the funds from the MMA Account, plus punitive damages and attorney fees.

{¶ 6} Appellant filed her answer on November 17, 2020, in which she denied any wrongdoing in her withdrawal of the funds from the MMA Account because she "was also the owner of the account with all rights thereto." Further, appellant denied that her status as a co-owner of the MMA Account resulted in the creation of any fiduciary relationship with Oscar and Leona.

{¶ 7} Thereafter, the matter proceeded through pretrial motion practice and discovery. On November 9, 2021, Oscar filed a motion for summary judgment. In the motion, Oscar asserted that appellant's withdrawal of $83,096.08 from the MMA Account shortly before Leona died was done without his knowledge or consent and without the knowledge and consent of Leona. According to Oscar, appellant did not use any of the withdrawn funds to provide care to himself or Leona.

{¶ 8} Several pieces of evidence were attached to Oscar's motion for summary judgment, including appellant's answers to interrogatories and requests for production,

3.

Oscar's affidavit, and supporting bank statements evidencing the withdrawal activity. In his affidavit, Oscar stated that he and Leona appointed Gaines as an additional named joint owner of the MMA Account in February 2018 to enable her to assist them in the handling of their bills and medical expenses. According to Oscar, "[n]o survivorship provision was ever added to the account and none was ever intended. The addition of Sharon to the account was never intended as a gift upon the death of either Leola or myself."

{¶ 9} In response to Oscar's motion, appellant filed a memorandum in opposition to summary judgment on November 29, 2021. Therein, appellant argued that she possessed the right to exert control over the funds deposited into the MMA Account since she was a co-owner on the account. Appellant noted the absence of any evidence of fraud, duress, or undue influence as to the opening of the MMA Account or her identification as an additional owner on the account.

{¶ 10} On December 1, 2021, Oscar filed his reply, in which he asserted that the Ohio Supreme Court case relied upon by appellant to support her argument, *Wright v. Bloom*, 69 Ohio St.3d 596, 635 N.E.2d 31 (1994), was not controlling in this case because the transfers at issue took place during the lifetimes of all the owners of the MMA Account. As such, Oscar argued that this case was subject to language in the Ohio Supreme Court's decision in *In re Thompson's Estate*, 66 Ohio St.2d 433, 423 N.E.2d 90 (1981), addressing proportional ownership interests among co-owners of joint bank accounts.

4.

{¶ 11} On December 28, 2021, while his motion for summary judgment was still pending before the trial court, Oscar died. As a consequence of Oscar's death, appellee, acting as administrator of Oscar's estate, was substituted as the named plaintiff.

{¶ 12} Upon consideration of the parties' arguments related to Oscar's motion, the trial court issued its order and judgment entry granting summary judgment to appellee on March 21, 2022. In its decision, the court found that *Thompson* was controlling as to the issue of how much money appellant was entitled to withdraw from the MMA Account since all three co-owners of the account were alive when appellant withdrew the funds at issue. Following *Thompson*, the trial court found that appellant was not entitled to withdraw any funds because she did not contribute any funds to the account.

{¶ 13} The trial court rejected Oscar's claims for breach of fiduciary duty and conversion. The trial court found that the evidence was inconclusive as to whether appellant had a fiduciary relationship with Oscar and Leona at the time of the withdrawals. Further, the trial court found that the evidence in the record did not support a claim for conversion because such evidence established only that appellant "simply withdrew funds based on an understanding that [she was] entitled to unfettered rights of the Huntington MMA joint account with survivorship rights."

{¶ 14} Notwithstanding its rejection of the breach of fiduciary and conversion claims, the trial court deemed it equitable to impose a constructive trust on the bank account into which appellant deposited the wrongfully withdrawn funds. Further, the

5.

court ordered appellant to pay appellee the amount of $83,096.80, the total amount of the funds withdrawn from the MMA Account.

{¶ 15} Thereafter, on April 18, 2022, appellant filed a timely notice of appeal.

## B.    Assignment of Error

{¶ 16} On appeal, appellant assigns the following error for our review:

The trial court abused its discretion by disregarding the contract rights of

the owners of bank funds to exercise their rightful control over the

deposited assets.

## II.    Analysis

{¶ 17} In her sole assignment of error, appellant argues that the trial court's grant of summary judgment to appellee should be reversed because it was based upon the erroneous conclusion that she wrongfully withdrew funds from the MMA Account despite the fact that she was an unrestricted co-owner of the account.

{¶ 18} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that

6.

conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 19} Here, appellant argues that she is plainly an unrestricted co-owner on the MMA Account, as evidenced by the personal signature card associated with that account, and was thus entitled to withdraw the funds from the account at her discretion. In support of her contention, appellant cites *Bloom* and insists that it is "controlling and dispositive" in this case.

{¶ 20} In response, appellee argues *Thompson*, not *Bloom*, governs this case. According to appellee, *Bloom* did not disturb the Ohio Supreme Court's holding in *Thompson* as to who owns funds deposited into a joint and survivorship bank account during the account holders' lifetimes. Because it is undisputed that appellant withdrew the funds in question from the MMA Account before Leona and Oscar died, appellee states that "there should be no question that the *Thompson* rule should be applied. We agree.

{¶ 21} Our resolution of the parties' arguments in this case involves two issues. First, we must determine whether appellant was entitled to withdraw the contested funds from the MMA Account. The proportional lifetime ownership of funds held by several co-owners of a joint and survivorship account was addressed by the Ohio Supreme Court in *Thompson*. That case involved two accounts held jointly, with survivorship rights, by Richard Thompson and his wife, Carma Lee. Prompted by marital problems, Richard closed the accounts and transferred the funds into two new accounts held in his name

7.

only. Thereafter, Richard was served with divorce papers and Carma Lee filed a motion seeking a restraining order to prevent Richard from withdrawing any funds from the two joint and survivorship accounts.

{¶ 22} Approximately four months later, Carma Lee died. Carma Lee's daughter, as the executrix of Carma Lee's estate, filed a probate inventory that included two unliquidated claims against Richard as constructive trustee for one-half of the amounts that were in the joint and survivorship accounts prior to Richard's withdrawal of the funds. At a hearing on the matter, Richard testified that the two joint and survivorship accounts consisted primarily of his contributions, that he told Carma Lee not to take money out of these accounts, and that he maintained possession and control over the accounts.

{¶ 23} Following the hearing, the probate court found that Richard had improperly withdrawn the funds from the parties' joint and survivorship accounts, and thereby breached a fiduciary relationship he had with Carma Lee as a co-owner of the funds. The court of appeals reversed, and the matter was accepted by the Ohio Supreme Court.

{¶ 24} Upon its review, the Ohio Supreme Court held that Richard was entitled to withdraw from the joint and survivorship accounts whatever funds he contributed to those accounts. *Thompson*, 66 Ohio St.2d at 440, 423 N.E.2d 90. The court further found that "[a] constructive trust [could] be imposed over any amounts withdrawn which exceeded those amounts attributable to [Richard's] contributions." *Id*. Consequently, the court

8.

remanded the matter to the probate court so that it could determine what proportion of the net contributions to the accounts were attributable to Carma Lee. *Id.*

{¶ 25} In summarizing its decision in *Thompson*, the court provided the following two-part holding:

1. A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

2. Sums remaining on deposit at the death of a party to a joint and survivorship account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. If there are two or more surviving parties, their respective ownerships during their lifetimes shall be in proportion to their previous ownership interests augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties.

*Id.* at paragraphs one and two of the syllabus.

{¶ 26} Approximately 13 years after *Thompson* was decided, the Ohio Supreme Court issued its decision in *Bloom*. In that case, relied upon by appellant in the present appeal, the Ohio Supreme Court established a conclusive presumption that "[t]he opening

9.

of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death." *Bloom*, 69 Ohio St.3d 596, 635 N.E.2d 31, at paragraph two of the syllabus. In so holding, the court overruled the second paragraph of the syllabus in *Thompson*. *Id.* The court in *Bloom* was careful to note that its decision "does not change the ownership-during-lifetime presumption set forth in *Thompson*, *supra*, at paragraph one of the syllabus, utilized in determining the rights of the parties and others to joint and survivorship funds in controversies arising during the parties' lifetimes." *Id*. at 607.

{¶ 27} Based upon the plain language in *Bloom*, we find that the first paragraph of the syllabus in *Thompson* is still controlling law in Ohio regarding the relative ownership of funds deposited into a joint and survivorship account held by several living co-owners. At the time of appellant's withdrawal of funds from the MMA Account in this case, both Leona and Oscar were still living. Therefore, *Thompson*, not *Bloom*, controls our disposition of the first issue in this case.

{¶ 28} The parties do not dispute that the funds deposited into the MMA Account were contributed entirely by Oscar and Leona.[2] Indeed, appellant does not assert that she

---

[2] The record in this case does not establish whether Leona made any contributions to the MMA Account prior to her death. However, this is a moot point since the funds were withdrawn *prior* to Leona's death and thus the wrongful conduct Oscar sought to remedy

contributed any funds whatsoever into the MMA Account. Accordingly, the trial court properly found that appellant was not the owner of any of the funds in the MMA Account. Since she did not own the funds, appellant was not entitled to withdraw the funds from the MMA Account and deposit them into her personal bank account.

{¶ 29} Having found that appellant was not entitled to withdraw the contested funds from the MMA Account, we now must examine the second issue in this case, which has to do with the appropriate remedy. As already noted, the *Thompson* court expressly sanctioned the imposition of a constructive trust to ensure the return of funds that are wrongfully withdrawn from a joint and survivorship account by one who does not own those funds. *Thompson* at 440.

{¶ 30} A constructive trust is an equitable remedy that protects against unjust enrichment. *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 19. It is usually invoked when property has been obtained by fraud, but "'may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.'" *Id.*, quoting *Ferguson v. Owens*, 9 Ohio St.3d 223, 226, 459 N.E.2d 1293 (1984). "In applying the theories of constructive trusts, courts also apply the well known

---

with his complaint occurred when all three co-owners were still living. Further, appellant does not argue that she is entitled to a share of the MMA Account funds as a beneficiary of Leona's estate, presumably because all of Leona's estate passed to Oscar, her surviving husband, upon her death.

11.

equitable maxim, 'equity regards [as] done that which ought to be done.'" *Ferguson* at 226.

{¶ 31} Here, the trial court fashioned an appropriate remedy to ensure that what ought to be done, namely the return of Oscar's funds to Oscar (or his estate). In order to effectuate this result, the trial court imposed a constructive trust on the personal bank account into which appellant deposited the contested funds. We find no error on the part of the trial court in fashioning such a remedy, particularly since it comports with the Ohio Supreme Court's decision in *Thompson*.

{¶ 32} For the foregoing reasons, we conclude that appellant was not entitled to withdraw the contested funds from the MMA Account. Further, we find that the trial court properly imposed a constructive trust in order to effectuate the return of the funds to appellee. Accordingly, appellant's sole assignment of error not well-taken.

### III. Conclusion

{¶ 33} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

The Estate of Oscar Haynes,
Gwendalyn Haynes Burel,
Administrator v. Sharon Gaines
C.A. No. L-22-1093

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                    _____
                                                        JUDGE

Gene A. Zmuda, J.

                                                   _____
Myron C. Duhart, P.J.                                  JUDGE
CONCUR.

                                                   _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.