[Cite as *In re Estate of Busch*, 2026-Ohio-1881.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| IN THE MATTER OF: THE ESTATE OF KATHLEEN ANELIA BUSCH | COURT OF APPEALS NO. {87}WD-25-073 |
| | TRIAL COURT NO. 2025 1099 |
| | **DECISION AND JUDGMENT** |
| | Decided: May 22, 2026 |

* * * * *

R. C. Wiesenmayer, for appellant.

James L. Rogers and Katrin E. McBroom, for appellee.

* * * * *

**ZMUDA, J.**

{¶ 1} Appellant, HCF of Perrysburg, Inc. dba The Manor at Perrysburg ("HCF"), appeals from a judgment entered by the Wood County Court of Common Pleas, Probate Division, denying HCF's objections to an estate's inventory and appraisal and approving the inventory and appraisal as filed by the estate's executor, Richard Miller ("Richard"). For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case**

{¶ 2} HCF, which operates as a skilled nursing facility, filed an Exception to the Inventory & Appraisal in the Estate of Kathleen Anelia Busch. (The decedent will be

referred to as "Kathleen.") Kathleen's son, Richard, is the executor of Kathleen's estate and the sole beneficiary of Kathleen's will dated August 8, 2019. Kathleen's will is uncontested.

## Statement of the Facts

{¶ 3} Kathleen and her husband bought a house in 2002. Kathleen became the sole owner of the house when her husband died in 2019.

{¶ 4} On January 21, 2020, Kathleen named Richard her power of attorney, which empowered him to assist his mother with bill paying and other financial matters.

{¶ 5} Over a year later, on February 11, 2021, Kathleen added Richard to her preexisting Huntington Bank savings and checking accounts as a joint owner with rights of survivorship. The two accounts were Kathleen's only accounts.

{¶ 6} On July 17, 2024, Kathleen became a resident of HCF. As part of the HCF application paperwork, Kathleen executed a "Consent to Treat & Admission Agreement." The first page of this agreement contains signature lines for the prospective resident and up to two "representatives." Kathleen signed the resident line. The lines for representatives were left blank.

{¶ 7} Incorporated into Consent to Treat & Admission Agreement were three exhibits, titled A, B, and C. Exhibit A provides representatives with an opportunity to voluntarily ensure payment of all of the resident's financial obligations to HCF by way of a personal guarantee. Notably, the language of the exhibit contains a line stating, "THE REPRESENTATIVE UNDERSTANDS THAT HE OR SHE IS NOT REQUIRED BY LAW OR THE FACILITY TO PERSONALLY GUARANTEE PAYMENT." The face

2.

of Exhibit A contains signature lines for up to two representatives. In the case of Kathleen's agreement, both were left blank.

{¶ 8} Exhibit B sets forth various "financial terms," including the "Duty to Pay." And Exhibit C, which contains the heading "Representative Authority & Duties," places additional potential financial obligations on any "representative."

{¶ 9} It is undisputed in this case that: Kathleen did not name Richard as her financial representative for purposes of her admission and stay at HCF; Richard did not sign as a representative for purposes of Kathleen's admission to HCF, but rather Kathleen signed the admission agreement on her own; and Richard's guarantee or signature was not required by HCF at the time of admission.

{¶ 10} On July 24, 2024, Richard, acting in his capacity as Kathleen's attorney in fact, completed a "Financial Disclosure Form" that HCF required for Kathleen. This document listed Kathleen's house, together with a notation that the house had been sold and was "waiting on a closing date." In addition, both Huntington bank accounts were listed, with Richard identified as a joint owner.

{¶ 11} HCF did not require any form of security to be taken against Kathleen's real property during her admission to HCF, nor did it seek to intervene or secure an interest in the sale of Kathleen's real property.

{¶ 12} Kathleen sold her house on July 26, 2024. Richard signed the closing documents as Kathleen's attorney in fact. On July 29, 2024, sale proceeds in the amount of $218,529.11 were deposited into the Huntington Bank joint savings account that was in Kathleen and Richard's name.

3.

{¶ 13} On September 11, 2024, Richard paid HCF $2,000 from the joint savings account for an August 15, 2024 invoice.

{¶ 14} Kathleen died on September 25, 2024. At the time of her death, $189,792.52 remained in the joint savings account.

{¶ 15} On October 16, Richard paid HCF $3,100 from the joint savings account to pay towards a September 16, 2024 invoice. Richard did not thereafter pay any money to HCF.

{¶ 16} On March 20, 2025, a claim in the amount of $15,789.93 was filed in the probate court on behalf of HCF against Kathleen's estate.[1]

{¶ 17} On May 19, 2025, Kathleen's will was admitted to probate and Richard was appointed executor of Kathleen's estate.

{¶ 18} On July 1, 2025, an inventory was filed listing probate assets in the amount of $8,395.26. HCF filed objections to this inventory, asserting that the remaining funds in the joint savings account should have been reflected as an estate asset and/or that Richard, as Kathleen's fiduciary, should not have allowed the proceeds from the sale of the house to be placed into the joint account.

{¶ 19} The parties agreed to file a joint stipulation of facts and to submit the matter to the trial court for decision on the objections to the inventory.

---

[1] On March 24, 2025 Promedica Toledo Hospital, a second estate creditor, filed its own claim against the estate in the amount of $2,150.34. Promedica Toledo Hospital is not a party to the current appeal.

4.

{¶ 20} In a decision filed on October 31, 2025, the trial court denied HCF's objections. Based on its review of the stipulated facts, the trial court determined that there had been no duress, undue influence, or lack of mental capacity that would impact the disposition of the joint checking account. The trial court noted that at no time during the course of any relevant transactions was Kathleen found to be incompetent and that no legal guardian was ever appointed for Kathleen.

{¶ 21} The trial court also found that there was nothing inappropriate regarding Richard's treatment of the Huntington bank accounts. Specifically, the court determined:

> Monies received from the sale of the real estate were actually deposited into one of the two accounts that Kathleen would no doubt have deposited the sales proceeds herself and used for Kathleen's benefit while Kathleen was alive. Richard was under no obligation to create a new account funded by the proceeds of the real estate sale. There is no evidence of Richard's misuse of any of the account funds. There is no evidence that Richard used any of the funds in [the joint accounts] for his personal benefit during Kathleen's lifetime. At no time did Richard change or attempt to change the ownership status of [the joint accounts].

In addition, the trial court found that "[f]rom the actual evidence before the court, the change in account status was Kathleen's decision."

{¶ 22} Regarding Kathleen's wishes, the trial court found that Kathleen's having named Richard as her sole beneficiary in her (uncontested) will was reflective of her true intent, which was that she "wanted to have control over the accounts during her lifetime and wanted Richard to have full ownership of [the accounts] upon [her] death."

{¶ 23} The trial court concluded that the evidence before the court did not support a finding that Richard had participated in a "fraudulent transfer" or that he had otherwise

5.

"violated his fiduciary duties arising from his role as Kathleen's attorney in fact and the sale of Kathleen's real property."

{¶ 24} Based on its assessment of the facts as presented and the circumstances present, the trial court found the balance of the funds remaining in the joint bank accounts were the lawful property of Richard and were not estate assets. The trial court further found that the July 1, 2025 inventory and appraisal, as filed, properly listed the estate's assets.

### Assignments of Error

{¶ 25} On appeal, HCF asserts the following assignments of error:

I.    The Trial Court erred when it concluded that "the evidence actually before the Court does not support a finding that Richard…or otherwise violated his fiduciary duties arising from his role as Kathleen's attorney in fact…."

II.    The Trial Court erred when it found that "Richard took no action for his own benefit as it pertained to the funds in the accounts during Kathleen's lifetime…."

III.    The Trial Court erred when it found, "From this court's assessment of the facts as presented and the circumstances present, the court finds the balance of the funds remaining in [the joint accounts] are the lawful property of Richard and are not estate assets."

IV.    The Trial Court erred when it failed to establish a constructive trust in [the joint savings account] for the benefit of the creditors of Kathleen's estate as an equitable remedy to provide funds for those creditors which Richard failed to pay as Kathleen's POA during Kathleen's lifetime.

6.

**Law and Analysis**

**{¶ 26}** A probate court's determination regarding an objection to an inventory "is generally reviewed under an abuse of discretion standard." *Estate of Grossman*, 2020-Ohio-5236, ¶ 16 (11th Dist.), citing *In re Wright*, 2019-Ohio-3480, ¶ 16 (4th Dist.), citing *In re Estate of Shelton*, 2003-Ohio-4593, ¶ 8 (11th Dist.); *see also In re Estate of Scott*, 2005-Ohio-5917, ¶ 2 (2d Dist.). When the issue presents a question of law, however, the probate court's decision is reviewed de novo. *Estate of Grossman* at *id.,* citing *In re Wright* at *id.,* citing *In re Estate of Shelton* at *id.*

**First Assignment of Error**

**{¶ 27}** HCF argues in its first assignment of error that the evidence does not support the trial court's finding that Richard did not violate his fiduciary duties that arose from his role as Kathleen's attorney in fact. In support of this argument, HCF cites various statutory provisions -- namely R.C. 1337.34, R.C. 1337.37, R.C. 1337.54, and R.C. 1337.36(A)(8),(9) -- all of which govern the relationship between a principal and his or her attorney/agent-in-fact, and none of which prescribe any rights or standing to an unsecured creditor such as HCF. Invoking these provisions, HCF accuses Richard of "self-dealing" with respect to Kathleen's assets "as relates to her estate creditors."

**{¶ 28}** We initially note that HCF never raised this argument in the trial court and so waived it on appeal. "[A]rguments raised for the first time on appeal are generally barred." *Dana Ltd. v. TACS Automation, LLC*, 2021-Ohio-2555, ¶ 50 (6th Dist.). "'[A] party cannot raise any new issues or legal theories for the first time on appeal.... Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial

7.

court process." *Id.*, quoting *Cawley JV, LLC v. Wall St. Recycling, LLC*, 2015-Ohio-1846, ¶ 17 (8th Dist.).

{¶ 29} Even if we were to consider the merits of HCF's argument, it would be unavailing to HCF in this case, because the trial court acted within its discretion in finding no violation of Richard's fiduciary duties to Kathleen. As evidence of "self-dealing" HCF points to the following: (1) that Richard sold Kathleen's home and deposited the sale proceeds into the joint savings account that "made him non-probate beneficiary upon Kathleen's death;" (2) that Richard failed to pay Kathleen's nursing home expenses from the bank accounts that he represented to be available to Kathleen upon her admission to the HCF facility; (3) that the house "belonged solely to Kathleen, and therefore, the net sale proceeds were solely hers;" and (4) the terms of Richard's grant of authority in Kathleen's power of attorney document omit "any gifting" and deny any compensation for services rendered by Richard.

{¶ 30} None of these facts is inconsistent with the trial court's determination that it was Kathleen's intent to have control over the accounts during her lifetime and that she wanted Richard to have full ownership of them upon her death. In depositing the house sale proceeds into the joint account, Richard ensured that Kathleen could withdraw all of the money from the account, spend all the money in the account, and otherwise do whatever she wanted with the account money during her lifetime. Richard did not breach any fiduciary duty to Kathleen by depositing her money in an account over which she had legal ownership. Although he paid two HCF bills from the joint account -- one during Kathleen's lifetime and even one shortly after her death -- in line with his duties as

8.

Kathleen's power of attorney, Richard owed no fiduciary duty to HCF at any time, nor was HCF an implied third-party beneficiary to any relationship between Richard and his mother. *See Aristocrat Lakewood Nursing Home v. Mayne,* 133 Ohio App.3d 651 (8th Dist. 1999) (Finding that nursing home had failed to show how attorney-in-fact's duty to her principal extended to the nursing home as a third party to that relationship); *O'Dell v. Vrable III, Inc.*, 2022-Ohio-4156, ¶ 75 (4th Dist.) ("Ohio does not recognize a common law or statutory fiduciary relationship between a nursing home and its residents."). Accordingly, HCF's first assignment of error is found not well-taken.

**Second Assignment of Error**

{¶ 31} HCF argues in its second assignment of error that the trial court erred when it found that Richard took no action for his own benefit during Kathleen's lifetime as it pertained to the funds in the accounts. As evidence of this error, HCF initially states that Richard "failed to pay Kathleen's nursing home bill [from HCF], from the joint and survivorship account, during Kathleen's lifetime." In fact, the evidence shows that he did pay two HCF bills from the joint savings account – one in September 11, 2024, prior to Kathleen's death, and another on October 16, 2024, after Kathleen's death. There is no evidence to suggest he failed to pay any nursing home bill during Kathleen's lifetime.

{¶ 32} Next, HCF once again argues that Richard, in depositing Kathleen's funds from the sale of her house, during her lifetime, into the joint savings account of which he was the survivor beneficiary upon Kathleen's death, acted in breach of his fiduciary duties, as a benefit to himself and to the detriment of Kathleen's creditors. This time, HCF relies on case law, rather than on statutory provisions.

9.

{¶ 33} In *Wright v. Bloom*, 69 Ohio St.3d 596 (1994), the Ohio Supreme Court established that '[t]he opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death." *Id.* at paragraph two of the syllabus. This rule establishes a rebuttable presumption in favor of the surviving owner. *Fields v. Brackney*, 2011-Ohio-1128, ¶ 19 (2d Dist.).

{¶ 34} On the other hand, where there exists a fiduciary relationship, such as a power of attorney, the person who holds the power must prove the fairness of the transaction, because a suspicion and presumption exist that the transaction resulted from undue influence. *In re Estate of Case*, 1998 WL 151141, *3 (2d Dist Apr. 3, 1998); *see also Fields* at ¶ 26, quoting *Case.*

{¶ 35} Where, as here, we must weigh the rebuttable presumption of survivorship rights in a joint and survivorship account against the suspicion with which we must view transfers of money under a power of attorney for the attorney-in-fact's benefit, "[t]he presumption does not apply to…funds that [Richard], as an attorney-in-fact who was also the beneficiary of the survivorship account[], transferred into the survivorship accounts, unless the propriety of such transfers can withstand exacting scrutiny." *Id.*; *see also Fields* at ¶ 24. Once this presumption arises, the beneficiary must show, by a preponderance of the evidence, that his conduct has been free of undue influence or fraud. *Id.*; *see also Fields* at ¶ 26.

10.

{¶ 36} Here, we find that the trial court could have reasonably believed that Richard -- who did not change any of Kathleen's ownership interests in the joint savings account, who did nothing improper as power of attorney when he signed the deed/closing documents for Kathleen's house sale; and who deposited the house sales proceeds into a pre-existing account which Kathleen owned and which was expressly disclosed to HCF in the financial disclosure form -- did nothing wrong. Such a conclusion is strongly buttressed in this case by the fact that Richard is the sole beneficiary of Kathleen's will. In addition, there is nothing in the record to suggest that Kathleen wished to prioritize payment to HCF at the expense of Richard's inheritance, following her death.

{¶ 37} Accordingly, HCF's second assignment of error is found not well-taken.

**Third Assignment of Error**

{¶ 38} HCF argues in its third assignment of error that the trial court erred in determining that the balance of the funds in the joint accounts are the lawful property of Richard and are not estate assets. Specifically, HCF contends that "Richard, as POA, owed Kathleen his loyalty and honesty to pay her nursing home expenses from the assets disclosed by Richard upon Kathleen's admission to the [HCF facility].

{¶ 39} In making this argument, HCF once more attempts to assert Kathleen's rights as against Richard as her power of attorney on its behalf. And, again, we note that there is nothing in the record to suggest that Kathleen wished for Richard to pay HCF any more than was legally required, following her death.

{¶ 40} Equally ineffective is HCF's argument that "there was no fairness shown…by Richard in his actions in failing to pay the nursing home expenses during the

11.

lifetime of Kathleen from the proceeds of the sale of her house." Again, there is no evidence to suggest that Kathleen or Richard failed to pay any HCF invoice received during Kathleen's lifetime. Upon Kathleen's death on September 25, 2024, ownership of the funds in the joint account automatically transferred to Richard. The March 20, 2025 claim in the amount of $15,789.93 that was filed against Kathleen's estate was filed nearly six months after ownership of the funds in the joint savings account had transferred to Richard. As HCF fails to establish any error in the trial court confirming Richard as the owner of the balance of the funds remaining in the joint savings account, HCF's third assignment of error is found not well-taken.

**Fourth Assignment of Error**

{¶ 41} HCF argues in its fourth assignment of error that the trial court erred in failing to establish a constructive trust on the joint savings account. This is yet another argument that HCF has waived on appeal, as it was never raised in the trial court. *See*

{¶ 42} *Dana Ltd. v. TACS Automation, LLC*, 2021-Ohio-2555, ¶ 50 (6th Dist.); *Cawley JV, LLC v. Wall St. Recycling, LLC*, 2015-Ohio-1846, ¶ 17 (8th Dist.).

{¶ 43} Even if the argument had not been waived, given our conclusions regarding the first three assignments of error, it would nevertheless be unsuccessful. "A constructive trust is an equitable remedy that protects against unjust enrichment." *Estate of Haynes v. Gaines,* 2023-Ohio-208, ¶ 30 (6th Dist.), citing *Estate of Cowling v. Estate of Cowling*, 2006-Ohio-2418, ¶ 19. In this case, HCF has failed to establish any entitlement to the money that remained in the joint savings account following Kathleen's death and, thus, fails to establish any basis for establishing a constructive trust. As HCF

12.

fails to demonstrate any error on the part of the trial court, HCF's fourth assignment of error is found not well-taken.

## Conclusion

{¶ 44} The judgment of the Wood County Court of Common Pleas, Probate Division, is affirmed. Appellee is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

| Thomas J. Osowik, P.J. | [[Applied Signature]] |
|---|---|
| | JUDGE |
| Gene A. Zmuda, J. | [[Applied Signature 2]] |
| | JUDGE |
| Charles E. Sulek, J. | [[Applied Signature 3]] |
| CONCUR | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.