[Cite as *InvesTek Mgt. Servs., Inc. v. Tate*, 2024-Ohio-5850.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

InvesTek Management Services, Inc.

Appellee

v.

Kyle Tate

Appellant

Court of Appeals No.  WD-23-070

Trial Court No. 2023 CV 0444

**<u>DECISION AND JUDGMENT</u>**

Decided:   December 13, 2024

* * * * *

R. Kent Murphree, for appellee.

Kyle Tate, pro se.

* * * * *

**MAYLE, J.**

**{¶ 1}** Appellant, Kyle Tate, appeals the December 19, 2023 judgments of the Wood County Court of Common Pleas granting the motions to dismiss and for summary judgment filed by appellee, InvesTek Management Services, Inc.  For the following reasons, we affirm.

# I. Background and Facts

{¶ 2} This case originated as a forcible-entry-and-detainer action that InvesTek filed against Tate in the Bowling Green Municipal Court. InvesTek manages the apartment complex where Tate resided.

{¶ 3} In 2018, Tate and his now ex-wife signed a lease for an apartment in Bowling Green. In 2021, they signed a lease renewal agreement that extended the term of their lease through March 31, 2023.[1]

{¶ 4} Sometime before the lease expired in March 2023, InvesTek offered Tate another lease renewal agreement that would have extended the term of his lease. The renewal agreement also would have increased his rent by $75 a month. Tate refused to sign the renewal agreement. He also refused to move out of the apartment.

{¶ 5} In late July 2023, InvesTek served Tate a three-day notice to leave the premises. InvesTek then filed the forcible-entry-and-detainer action underlying this appeal. In its complaint, InvesTek alleged that (1) it was the manager for the owner of the apartment complex; (2) Tate signed a lease in 2018; (3) Tate signed a lease renewal agreement in 2021 that extended the term of the lease to March 31, 2023; (4) Tate failed to leave the apartment when the lease expired on March 31, 2023, and was an unlawful holdover tenant; (5) Tate's co-lessee, his ex-wife, had vacated the apartment; and (6)

---

[1] Tate's ex-wife is not a party to this appeal. She moved out of the apartment, and InvesTek did not name her as a defendant in the underlying forcible-entry-and-detainer complaint.

2.

InvesTek gave Tate a three-day notice to leave the apartment on July 27, 2023, but he did not leave.

{¶ 6} In response to InvesTek's complaint, Tate filed a counterclaim exceeding the municipal court's jurisdiction, so the municipal court transferred the case to the trial court. After the case was transferred, Tate filed a document titled "General Allegations" that the trial court chose to treat as a counterclaim. Tate included a jury demand on his general allegations and later paid a jury deposit.

{¶ 7} The factual allegations in Tate's counterclaim are wide-ranging and encompass alleged wrongdoing by people and entities who are not parties to this case. It also includes over 200 pages of attachments that are, for the most part, unrelated to his claims against InvesTek.

{¶ 8} Specific to InvesTek, Tate alleged, among other things, that (1) InvesTek had increased his rent every year since he signed his original lease in 2017, usually by $15 to $30 per month; (2) he refused to sign the lease renewal that InvesTek offered him in November 2022 that included a $75 a month rent increase; (3) he tried to discuss the rent increase with InvesTek, but someone in the office told him that InvesTek would continue to raise his rent, "used the term inflation as a reason to raise [the] rent[,]" and "mentioned fair market rent as a reason to raise the rent[;]" (4) prior rent increases were related to improvements InvesTek made to the apartment, but it had not made any improvements that justified a $75 dollar increase; (5) he twice tried to escrow his rent

3.

with the municipal court because of the rent increase and was refused both times; (6) at some earlier point in time, InvesTek refused to allow Tate to build a greenhouse on his patio because the patio is considered "community space;" (7) Tate's apartment has always passed InvesTek's twice-yearly inspections; (8) his lease says that he is not responsible for paying the gas bill, but he has had to pay it for five years; (9) his lease says that cable is not included with his rent, but InvesTek apparently provides cable and internet services; (10) Tate pays for his own internet because of issues with the apartment's internet and he uses streaming services because InvesTek "decreased the cable plan" after his second year as a tenant; (11) a sign on the side of the apartment building says that cable is a free amenity and the building's website says that cable and internet are included with the apartments; (12) he told InvesTek about his "regular day job employment issues, Coronavirus [sic] issues, and how he feels what they are doing is unconscionable[;]" (13) on April 2, 2023, he lost power to part of the apartment that seemingly was not controlled by any of the circuit breakers in the apartment; and (14) InvesTek served him with an eviction notice on April 3, 2023, for "failing to sign a lease renewal agreement[,]" despite him paying rent on time for five years and trying to escrow his rent.[2]

---

[2] InvesTek filed an eviction case after serving Tate with the April 2023 notice to leave, but the trial court dismissed it because the parties failed to comply with the court's local rules.

4.

{¶ 9} Regarding his claims against InvesTek, Tate alleged that InvesTek "Intentionally misrepresented[,]" "committed fraud[,]" used false advertising and committed deceptive trade practices in violation of R.C. Ch. 4165, committed unconscionable acts in violation of UCC 2-302 and R.C. 1302.15 and 1345.03 by increasing the rent and not allowing him to negotiate the adhesion contract, violated the Valentine Act and the Ohio Consumer Sales Practices Act, violated "Fair Market Rent" by charging more rent for his apartment in Bowling Green than it does for similar apartments in other cities in northwest Ohio, unconscionably relied on inflation as a reason for increasing his rent, acted unconscionably by denying his request to put a greenhouse on his patio, and used a contract with "discrepancies [that] are unconscionable."

{¶ 10} After answering the counterclaim, InvesTek filed a motion for summary judgment on its forcible-entry-and-detainer claim and a Civ.R. 12(B)(6) motion to dismiss Tate's counterclaim for failure to state a claim upon which relief can be granted. In its motion for summary judgment, InvesTek argued that it was entitled to judgment because, although Tate once had a lease for the apartment, he "objected to a renewal of the lease because apparently he did not like the terms proposed by [InvesTek,]" so he was "a tenant at sufferance and not entitled by law to detain the premises." It included with its motion the affidavit of its senior operations manager, who averred that Tate had signed a lease and a lease renewal agreement; the term of his tenancy expired on March

5.

31, 2023; Tate did not leave the apartment on March 31, 2023; InvesTek served him with a three-day notice to leave the premises on July 27, 2023; and Tate had unlawfully possessed the apartment since March 31, 2023. It also included copies of Tate's 2018 lease, 2021 lease renewal agreement, and the July 2023 notice to leave the premises. Tate did not file a response to the summary judgment motion.

{¶ 11} In its motion to dismiss, InvesTek argued that each of the eight claims that it identified in Tate's counterclaim failed as a matter of law. First, his intentional misrepresentation claim failed because Tate did not identify a material misrepresentation, that the misrepresentation was knowingly false, that it was made with the intent to mislead, or that he had justifiably relied on it. Second, Tate's fraud claim failed because he did not plead it with particularity, and "there is no indication anywhere in the Counterclaim where [Tate] alleges any specific fact that has anything to do with him (or his lease) which might even approach the vicinity of actionable fraud that he can pursue." Third, Tate's deceptive trade practices claim failed because R.C. Ch. 4165 does not apply to residential leases. Fourth, his UCC and R.C. Title 13 claims failed because the UCC applies only to commercial transactions, not to transactions between landlords and tenants. Fifth, Tate's Valentine Act claim failed because the act is meant to prevent monopolies and has nothing to do with landlord-tenant relationships. Sixth, his CSPA claim failed because a lease of real property is not a "consumer transaction" and Tate's lease was not the "sale" of a "good" or "service" within the meaning of the CSPA.

6.

Seventh, his fair market rent claim failed because it was not a claim cognizable under Ohio law. Finally, Tate's unconscionability claim failed because unconscionability can be an affirmative defense to a contract action, but it is not a standalone claim for damages.

{¶ 12} In his response, Tate argued that his lease did fall within the purview of the CSPA and UCC. He also argued that the Valentine Act applied because InvesTek's unconscionable acts were restricting trade. Regarding his unconscionability claim, Tate repeated some of the factual bases he alleged in his counterclaim (along with some new ones), but did not cite to any Ohio law supporting his belief that unconscionability is a standalone claim. Regarding his fraud claim, he argued that he submitted sufficient documentation with his counterclaim to show that fraud occurred.

{¶ 13} The trial court issued separate judgment entries granting both of InvesTek's motions. In its entry granting InvesTek's motion for summary judgment, the court found that Tate remained in the apartment after his lease expired and had not provided any "defense to justify his continued occupancy of the property[,]" so InvesTek was entitled to summary judgment. The court also awarded InvesTek damages.

{¶ 14} In its entry granting InvesTek's motion to dismiss, the court found that Tate failed to state a claim upon which relief could be granted in each of the eight claims in his counterclaim. First, Tate did not identify any false representation, allege any intent to mislead, or point to any injury caused by his reliance. Second, Tate lacked standing to

7.

raise the fraud claim because the only potential fraud he alleged was communicated to a third party. Third, R.C. Ch. 4165 does not provide consumers with a cause of action, and, even if it did, Tate did not "specify which part of R.C. § 4165.02(A) InvesTek has violated." Fourth, the UCC "applies to the sale of goods, not to the landlord-tenant relationship." Fifth, the Valentine Act is inapplicable to these facts because Tate did not allege that InvesTek's practice of including the price of cable and internet services in his rent with other amenities caused "harm in the relevant market . . . ." Sixth, the CSPA does not apply to residential leases. Seventh, Tate's allegations about "Fair Market Rent" did not state "the elements of an actual claim . . ." under Ohio law. Finally, despite noting that "unconcionability [sic] is not really an independent cause of action[,]" the court analyzed the counterclaim to determine if Tate had pleaded facts that would support a finding that Tate's lease was unconscionable. It found that Tate failed to show that the lease was procedurally unconscionable, and it did not have "sufficient evidence to determine substantive unconcionability [sic] at this time."

{¶ 15} Tate now appeals, raising three assignments of error.

## Assignment of Error I

Judge Kuhlman denied Mr. Tate's legal right to trial. Mr. Tate paid a jury fee and was denied all legal rights.

## Assignment of Error II

Mr. Tate had legal Holdover tenants' rights. These rights were violated and was evicted.

8.

Assignment of Error III

Mr. Tate provided to the court adequate information pertaining to his case. These hundreds of pages proved Mr. Tate's case. The court disregarded this information. Mr. Tate believes the court is negligent in this matter[.]

## II. Law and Analysis

### A. Any appeal of the trial court's summary judgment decision is moot.

{¶ 16} As a preliminary matter, we find that Tate's appeal is moot to the extent that he is appealing the trial court's decision to grant summary judgment on InvesTek's forcible-entry-and-detainer complaint.

{¶ 17} Because "[a]n action in forcible entry and detainer 'determines the right to immediate possession of the property and nothing else[,]'" the appeal of an eviction is moot when the landlord retakes possession of the property. *Tiefenbacher v. Shorter*, 2021-Ohio-2624, ¶ 20 (6th Dist.), quoting *Seventh Urban, Inc. v. Univ. Circle Property Dev., Inc.*, 67 Ohio St.2d 19, 25, fn. 11 (1981). This is because once a landlord retakes the property, "'there is no further relief that can be granted.'" *Id.*, quoting *Landings at Beckett Ridge v. Holmes*, 2020-Ohio-6900, ¶ 30 (12th Dist.); *Showe Mgt. Corp. v. Hazelbaker*, 2006-Ohio-6356, ¶ 7 (12th Dist.). The sole method for the party appealing a forcible-entry-and-detainer action to avoid mootness is by seeking and receiving a stay of execution after filing the appeal and posting any required bond. R.C. 1923.14(A); *Tiefenbacher* at ¶ 21.

9.

{¶ 18} In his brief, Tate says that he no longer lives in the apartment, and nothing in the record shows that he sought or obtained a stay of the trial court's judgment either in the trial court or this court. Because Tate is no longer in possession of the property, any appeal of the forcible-entry-and-detainer action is moot. Therefore, our decision will focus only on the trial court's decision to dismiss Tate's counterclaim.

### B. The trial court did not violate Tate's right to a jury trial.

{¶ 19} In his first assignment of error, Tate argues that the trial court denied his "legal right to trial." A party's request for a jury trial does not preclude the trial court from granting a Civ.R. 12(B)(6) motion. *Brown v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-4012, ¶ 13 (10th Dist.). The trial court's dismissal of all claims under Civ.R. 12(B)(6) moots the right to a jury trial in a civil case. *Barstow v. Waller*, 2004-Ohio-5746, ¶ 6 (4th Dist.).

{¶ 20} Here, the trial court properly granted InvesTek's motion to dismiss, which mooted Tate's jury demand. This did not violate Tate's right to a jury trial. Tate's first assignment of error is not well-taken.

### C. Tate waived his arguments about holdover rights.

{¶ 21} In his second assignment of error, Tate argues that he was a "legal holdover tenant" because he eventually escrowed his rent and InvesTek accepted his rent payments, but "[t]hese rights were violated and he was evicted." However, as InvesTek points out in its brief, Tate did not make any arguments related to holdover rights in the

10.

trial court, and arguments a party raises for the first time on appeal are generally barred. *Angotti v. Jones*, 2024-Ohio-3222, ¶ 16 (6th Dist.), citing *Dana Ltd. v. TACS Automation, LLC*, 2021-Ohio-2555, ¶ 50 (6th Dist.); *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 30 ("[A]n appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts . . . ."). Because Tate did not make these arguments in the trial court, he has waived them on appeal, and we will not consider them. *Angotti* at ¶ 16. Therefore, Tate's second assignment of error is not well-taken.

### D. The trial court properly granted InvesTek's motion to dismiss.

{¶ 22} In his final assignment of error, Tate argues that he provided "adequate information" to prove his case, but the trial court "negligent[ly]" disregarded the information. In response, InvesTek generally restates the arguments it made in its motion to dismiss.

{¶ 23} We review de novo a trial court's decision granting a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted. *Perrysburg Twp. v. Rossford,* 2004-Ohio-4362, ¶ 5. In reviewing a Civ.R. 12(B)(6) motion, we presume that the complaint's factual allegations are true and make all reasonable inferences in the nonmoving party's favor. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). To dismiss a complaint under Civ.R. 12(B)(6), "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim

11.

that would entitle the plaintiff to the relief sought." *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975).

{¶ 24} After reviewing Tate's counterclaim, we find that he has failed to allege any claims upon which relief can be granted.

## 1. Intentional misrepresentation

{¶ 25} Tate first claims that InvesTek "intentionally misrepresented." To plead a claim for intentional misrepresentation, Tate was required to allege facts showing that (1) InvesTek made a representation; (2) the representation was material to the underlying transaction; (3) InvesTek knew that the representation was false, or made it with "such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;" (4) InvesTek intended to mislead Tate into relying on the misrepresentation; (5) Tate justifiably relied on the misrepresentation; and (6) Tate was injured as a result. *Cuspide Props., Ltd. v. Earl Mechanical Servs.*, 2015-Ohio-5019, ¶ 54 (6th Dist.), citing *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 73 (1986).

{¶ 26} Here, it is unclear what Tate is relying on to support his intentional misrepresentation claim. The primary statements that he both alleges are false and directly attributes to InvesTek are statements about cable and internet being "free" at his apartment complex. However, he does not claim that the free cable and internet were material to him signing the leases, that InvesTek misled him into relying on the promise

12.

of free cable and internet, or that he justifiably relied on that promise.  If Tate is relying on InvesTek's statements about inflation, "fair market rent," or the cost of repairs as justifications for raising his rent over the years, the counterclaim does not allege that InvesTek made these statements knowing that they were false or with such recklessness and utter disregard for their truth that we can presume knowledge.  Because Tate has failed to plead each of the elements of intentional misrepresentation, we find that the trial court properly granted InvesTek's motion to dismiss this claim.

## 2. Fraud

{¶ 27} Tate's fraud claim is based on his allegations that the owner of the apartment building where he lived (that is not a party to this suit) fraudulently obtained a loan from a bank (that is also not a party to this suit).  He does not claim that any type of fraud was perpetrated against *him*.  In Ohio, a fraud claim cannot be based on statements made to a third party.  *Gaffin v. Haslam*, 2024-Ohio-2117, ¶ 23 (4th Dist.); *Thomas v. Delgado*, 2022-Ohio-4235, ¶ 85 (3rd Dist.); *McWreath v. Cortland Bank*, 2012-Ohio-3013, ¶ 63 (11th Dist.).  In other words, a litigant cannot bring a fraud claim on someone else's behalf, which is exactly what Tate is trying to do here.  Assuming, as we must, that the allegations in the counterclaim are true, Tate has—at best—shown that the nonparty bank was defrauded by the nonparty building owner.  This is insufficient to show that Tate, himself, has a fraud claim against InvesTek.  The trial court properly granted InvesTek's motion to dismiss this claim.

13.

### 3. Deceptive trade practices

**{¶ 28}** Tate alleged that InvesTek committed deceptive trade practices by falsely advertising that certain amenities at its apartments are "free" even though residents are charged for them as part of their rent. The purpose of Ohio's Deceptive Trade Practices Act is "exclusively to protect the interests of a purely commercial class, rather than individual consumers, against unscrupulous commercial conduct." *Goomai v. H&E Ent., LLC*, 2023-Ohio-3901, ¶ 26 (1st Dist.), *rev'd on other grounds*, 2024-Ohio-5711, citing *Dawson v. Blockbuster, Inc.*, 2006-Ohio-1240, ¶ 24 (8th Dist.). As such, it does not provide an individual consumer with a private right of action against a commercial entity. *Hamilton v. Ball*, 2014-Ohio-1118, ¶ 33 (4th Dist.); *Torrance v. Rom*, 2020-Ohio-3971, ¶ 50 (8th Dist.). Although Tate mentioned in his counterclaim that he operated an eBay business out of the apartment,[3] there is absolutely no indication in the counterclaim that he was attempting to bring the deceptive-trade-practices claim as a business owner or that InvesTek's false advertising affected him in a commercial capacity. Because Tate could not maintain this claim as a consumer, the trial court correctly dismissed it.

### 4. UCC and R.C. Title 13

**{¶ 29}** Tate alleged in his counterclaim that InvesTek violated several sections of the UCC and R.C. Title 13 (which codifies Ohio's version of the UCC). His arguments

---

[3] Tate briefly mentioned that InvesTek "seem[ed] to have no problem with [him] running a small eBay business from the residence[,]" and referred to the eBay business as part of his request for lost income and in his concluding paragraph.

14.

fail to recognize that those laws apply to contracts for goods, and a residential real estate lease does not fall into that category. *See, e.g.,* R.C. 1302.01(A)(11) ("'Contract' and 'agreement' are limited to those relating to the present or future sale of goods."); R.C. 1302.01(A)(8) ("'Goods' means all things . . . which are movable at the time of identification to the contract for sale . . . ."); R.C. 1302.02 ("[S]ections 1302.01 to 1302.98, inclusive, of the Revised Code, apply to transactions in goods . . . ."); R.C. 1310.01(A)(5), (8), (10) (when read together, define a "consumer lease" as a lease *of goods* to an individual who takes *the goods* primarily for a personal, family, or household purpose). Tate's apartment lease is not covered by the plain language of these statutes, so InvesTek's actions relative to Tate's apartment lease could not have violated the UCC or R.C. Title 13. The trial court correctly dismissed this claim.

### 5. Valentine Act

{¶ 30} As it relates to InvesTek, Tate's counterclaim alleges that tying cable and internet to his rent as part of his lease violates the Valentine Act, Ohio's version of the federal Sherman Antitrust Act. The Valentine and Sherman Acts are intended to protect competition and the market as a whole, not to protect any individual market competitor. *Island Express Boat Lines, Ltd. v. Put-In-Bay Boat Line Co.*, 2007-Ohio-1041, ¶ 84 (6th Dist.), citing *Care Heating & Cooling Inc. v. Am. Std., Inc.*, 427 F.3d 1008, 1014 (6th Cir. 2005); and *Natl. Hockey League Players' Assn. v. Plymouth Whalers Hockey Club,* 325 F.3d 712, 720 (6th Cir. 2003). Accordingly, unless an individual can show market-

15.

wide injury along with their personal injury, the individual does not fall within the protections of the Valentine Act. *Id.* In other words, an antitrust claim based only on allegations of personal (i.e., not market-wide) injuries will not succeed as a matter of law. *Id.*, citing *Baseball at Trotwood, LLC v. Dayton Prof. Baseball Club, LLC*, 113 F.Supp.2d 1164, 1172 (S.D.Ohio 1999).

{¶ 31} Tate's counterclaim does not allege that InvesTek is causing any market-wide injury by tying cable and internet to his rent; he is only alleging that he, individually, is being injured. Without some injury to the market *in addition to* his individual injury, Tate cannot sustain a Valentine Act claim. Therefore, the trial court properly dismissed this claim.

### 6. CSPA

{¶ 32} Tate makes several arguments related to the CSPA. However, the Ohio Supreme Court could not have made it any clearer that "R.C. Chapter 1345 (Consumer Sales Practices Act) does not apply to residential lease transactions." *Heritage Hills, Ltd. v. Deacon*, 49 Ohio St.3d 80 (1990), syllabus. Tate's complaints relate to his residential lease, so they are outside the scope of the CSPA. Accordingly, the trial court did not err by dismissing Tate's CSPA claim.

### 7. "Fair Market Rent"

{¶ 33} Although Tate alleged that InvesTek's practice of charging more for apartments in Bowling Green than it does for similar apartments in other cities in

16.

northwest Ohio somehow violates the IRS's definition of "fair market rent," he did not cite any Ohio or federal law showing that such a violation is an independent cause of action. Neither InvesTek nor the trial court was able to find any substantive law that supported such a claim. We could not either. Because Tate's allegations about fair market rent do not state a claim that is cognizable under Ohio or federal law, the trial court properly dismissed this claim.

### 8. Unconscionability

{¶ 34} Finally, Tate raised the issue of his lease agreement being unconscionable because it (1) included the costs of cable and internet; (2) said he was not responsible for gas, despite him having to pay the gas bill; (3) included the costs of amenities that InvesTek described as "free" in its advertisements; and (4) was an adhesion contract.

{¶ 35} Unconscionability of a contract is an affirmative defense. *DeFoe v. Schoen Builders, LLC*, 2019-Ohio-2255, ¶ 40 (6th Dist.). It is not a standalone claim that needs to be pleaded in a counterclaim. *See Anderson v. Ballard*, 2010-Ohio-3926, ¶ 36 (6th Dist.). Because unconscionability is not its own claim, it can never "state a claim upon which relief can be granted, . . ." and cannot survive a Civ.R. 12(B)(6) motion. The trial court properly dismissed this claim.

{¶ 36} In sum, after reviewing Tate's counterclaim, we find that each of his eight claims fails to state a claim upon which relief can be granted, so InvesTek is entitled to

17.

have his counterclaim dismissed.  Therefore, we affirm the trial's decision granting InvesTek's Civ.R. 12(B)(6) motion.

### III. Conclusion

{¶ 37} For the foregoing reasons, the December 19, 2023 judgments of the Wood County Court of Common Pleas are affirmed.  Tate is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
                                                                                JUDGE

Christine E. Mayle, J.

_____

Chales E. Sulek, P. J.
CONCUR.
                                                                                JUDGE

_____
                                                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.