**[Cite as *Angotti v. Jones*, 2024-Ohio-3222.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Maria L. Angotti

    Appellee

v.

Thomas J. Jones Sr.

    Appellant

Court of Appeals No.  E-23-056

Trial Court No.  2009 DR 047

**<u>DECISION AND JUDGMENT</u>**

Decided:  August 23, 2024

* * * * *

Michael J. Tony, for appellee.

David J. Berta, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Thomas Jones, Sr., appeals the judgment of the Erie County Court of Common Pleas, Domestic Relations Division, finding him in contempt of court for failing to pay school fees and medical expenses for his children and ordering him to pay $27,534.89 within six months as a purge condition.  For the reasons that follow, the trial court's judgment is affirmed.

# I. Factual Background and Procedural History

{¶ 2} Jones and appellee Maria Angotti were divorced on September 3, 2010. As part of the divorce decree, Jones was ordered to pay his children's school fees and 50 percent of their uninsured medical expenses. On July 8, 2014, the divorce decree was modified for Jones to pay 57.01 percent of the uninsured medical expenses.

{¶ 3} On January 29, 2020—the date of the parties' oldest daughter's 18th birthday—Angotti sent Jones a packet of all of the outstanding bills accumulated since the divorce. Several months later, on September 25, 2020, Angotti filed a motion to show cause seeking to hold Jones in contempt for failure to pay those school fees and medical expenses. The motion alleged that Jones's share of the medical expenses "total more than $16,946.23 (to be determined at hearing)." In addition, the motion alleged that Jones owed unpaid child support of $6,465.88 plus additional unpaid school fees.

{¶ 4} On February 17, 2022, Angotti filed an amended motion to show cause, in which she alleged that Jones's share of the medical expenses was $17,665.69. Angotti noted that Jones's child support obligation had been paid. Angotti sought an order compelling Jones to pay his share of the medical expenses, a minimum of $1,000 in attorney fees, and all court costs and fees associated with the show cause motion. In addition, Angotti asked the court to impose the maximum allowable fine and jail sentence for contempt.

{¶ 5} On August 21, 2023, the magistrate held a hearing on Angotti's motion to show cause. At the hearing, Angotti submitted and testified to 191 documents detailing unreimbursed medical payments that she made since the divorce. Jones's share of those

2.

payments totaled $20,051.75. Additionally, Angotti submitted a number of documents detailing unreimbursed school fees totaling $1,738.14. She also testified that she had paid $4,600 in legal expenses up to the date of the hearing, and the parties stipulated that her counsel's rate of $250.00 per hour was reasonable. Finally, she testified that she incurred a fee of $145.00 to serve the motion to show cause on Jones.

{¶ 6} On cross-examination, Angotti testified that the packet of medical expenses that she submitted at the hearing was not the same as what she sent to Jones on January 29, 2020. Angotti explained that it is now more organized and includes other receipts and bills that she has since found, as well as recent medical expenses generated by their younger daughter, all of which were provided in discovery. She further testified that in the early months and years after the divorce she would contact Jones about paying the medical expenses and he would become belligerent and refuse to pay, claiming that was why he paid child support. She stated that after a while she grew tired of being yelled at and stopped discussing the bills, although they did discuss the issue sporadically during the times when there was not a civil protection order in place. Angotti testified that Jones always refused to pay.

{¶ 7} Jones testified that communication between the parties was difficult shortly after the divorce and that both parties were unpleasant with the other. He testified that he also incurred medical bills in the early years, which he submitted to Angotti and she refused to pay. Further, when Angotti would bring up a medical payment, Jones asked her to send him a copy of the bill and she refused. On cross-examination, he admitted,

3.

though, that since Angotti sent the bills on January 29, 2020, he has not reimbursed her in any amount and that he had not developed any plans to reimburse her.

{¶ 8} At the end of the hearing, Jones's counsel argued to the court that the divorce decree was a consent entry, thus the court should only look at bills incurred within the last six years because of the statute of limitations on a written agreement. Angotti's counsel responded that Jones was attempting to raise the defense of laches, but failed to present evidence meeting the elements of that doctrine. Counsel for Jones responded that he was not arguing laches, only the statute of limitations. The magistrate took the matter under advisement.

{¶ 9} Following the hearing, the magistrate issued his decision on August 31, 2023, in which he found that Jones was in indirect civil contempt for failing to pay the school fees and his portion of the uninsured medical expenses. The magistrate recommended that Jones serve 30 days in the Erie County Jail and pay a $250.00 fine unless he satisfied several purge conditions, including that he pay $27,534.89 to Angotti within six months. That sum represented $20,051.75 in medical expenses, $1,738.14 in school fees, $5,600 for Angotti's attorney fees, and $145.00 for the fee to serve the motion to show cause. The magistrate found that the six-month timeframe was sufficient for Jones to secure financing if he was unable to pay the amount with funds on hand. The magistrate further recommended that Jones pay $1,250.00 per month until the full amount was satisfied.

{¶ 10} Jones timely filed objections to the magistrate's August 31, 2023 decision, and later supplemented those objections with a merit brief. Jones argued that the

4.

magistrate abused his discretion in allowing the submission of medical expenses that were over 12 years old and in finding him in contempt regarding medical bills that were not given to him prior to the filing of the motion to show cause in violation of his right to notice. Jones also argued that the magistrate erred when he considered bills older than six years and thus past the statute of limitations for a breach of contract action. Finally, Jones argued that the magistrate erred in ordering the payment within six months without considering his debt to income ratio and yet while considering his current wife's income.

{¶ 11} On November 2, 2023, the trial court entered its judgment overruling Jones's objections and adopting the magistrate's decision.

## II. Assignments of Error

{¶ 12} Jones now appeals the trial court's November 2, 2023 judgment, raising three assignments of error for review:

1. The trial court committed reversible error and abused its discretion when it ordered the Appellant to pay the sum of $27,534.89 within six months and further considered Appellant's spouse's income in the determination of an appropriate amount of time for payback.

2. The trial court committed reversible error and abused its discretion when it found that the Appellant was liable on the total amount of $27,534.89 when it is clear that that amount is not supported by the evidence and was supplemented after the amended Motion to Show Cause was filed.

5.

3. The trial court committed reversible error when it allowed the Appellee to present evidence, some of which was over 10 years old, and held the Appellant liable for payment of unreimbursed medical bills as the time period for reasonable reimbursement had passed.

For ease of discussion, this court will address the assignments of error in reverse order.

### III. Analysis

{¶ 13} Indirect contempt is defined by R.C. 2705.02(A), which provides, "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." "The burden is on the moving party in a civil-contempt proceeding to provide clear and convincing evidence that the alleged contemnor is in contempt of court." *In re M.O.E.W.*, 2019-Ohio-5364, ¶ 10 (6th Dist.), citing *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980).

{¶ 14} This court reviews a trial court's decision in a contempt proceeding for an abuse of discretion. *In re Estate of Jackson*, 2020-Ohio-4334, ¶ 6 (6th Dist.), citing *Siegel Seaman v. Sloan*, 2016-Ohio-5432, ¶ 12 (6th Dist.). An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

6.

## A. General Finding of Contempt

{¶ 15} In his third assignment of error, Jones argues that the trial court erred in allowing Angotti to present evidence of, and seek reimbursement for, medical bills after the time for reasonable reimbursement had passed. In support, Jones relies on the doctrine of laches and general notions of reasonableness.

{¶ 16} As to the former, Jones expressly did not argue laches in the trial court and therefore waived this argument. "[A]rguments raised for the first time on appeal are generally barred." *Dana Ltd. v. TACS Automation, LLC*, 2021-Ohio-2555, ¶ 50 (6th Dist.). "Such arguments are barred by the doctrine of waiver for failure to raise these arguments before the trial court. It is well-established that a party cannot raise any new issues or legal theories for the first time on appeal . . . Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." *Id.*, quoting *Cawley JV, LLC v. Wall St. Recycling, LLC*, 2015-Ohio-1846, ¶ 17 (8th Dist.).

{¶ 17} As to the latter, Jones cites general notions of reasonableness to argue that the trial court abused its discretion. Jones does not dispute that he is generally responsible for his portion of the medical expenses under the divorce decree. Instead, the question in this case is simply one of timing: Is the trial court's finding of contempt for Jones's failure to pay his portion of the medical expenses unreasonable, arbitrary, or unconscionable where some of the expenses were not presented to him until up to ten years after they were incurred, but where Jones still had not paid them three years after they were presented? Notably, Jones does not cite any case or statutory authority for the proposition that medical bills must be timely presented for reimbursement. Moreover,

7.

neither the original nor the amended divorce decrees contain any provision regarding the timely reimbursement of medical expenses, stating only that Jones shall pay 50 percent, which was later amended to 57.01 percent.

{¶ 18} Upon review, this court cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable. The divorce decree obligated Jones to pay his share of the medical expenses. Despite this, Angotti testified that Jones belligerently denied her attempts at reimbursement shortly after the divorce and the experience was so unpleasant that she stopped bringing up the issue. Even when confronted with the medical bills in January 2020, Jones failed to make any payments or devise a plan to make payments for the next three and a half years up to the time of the contempt hearing. Notably, while some of the medical bills were old, others were recent, yet Jones still did not pay his share of them. The record clearly demonstrates that Jones disobeyed the divorce decree. Therefore, the trial court did not abuse its discretion in finding him in contempt.

{¶ 19} Accordingly, Jones's third assignment of error is not well-taken.

## B. Specific Amount Owed

{¶ 20} In his second assignment of error, which he argues in conjunction with his first, Jones contends that the trial court abused its discretion when it allowed Angotti to file and present a single show cause motion for medical payments that occurred over a ten-year period. He notes that the initial amount requested was $17,665.69 in the amended motion to show cause, but that amount increased to over $21,000 (including medical expenses and school fees) by the time of the show cause hearing. He asserts that

8.

the trial court had no authority to increase the award over the amount requested in the motion to show cause, and that had Angotti wanted payment for the additional amount she should have either amended her motion to show cause again or filed a new one. Jones argues that he was not provided proper notice of any of the additional bills.

{¶ 21} Jones's arguments raise considerations of due process, namely that he was not notified of the additional bills that he was found in contempt for not paying. "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996). "[T]he concept of due process is flexible and varies depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur." *Id.* "Due process for contempt proceedings includes providing the alleged contemnor with notice of the allegations and an opportunity to be heard on those allegations." *Andrews v. Andrews*, 2023-Ohio-293, ¶ 15 (6th Dist.), citing *Sassya v. Morgan*, 2019-Ohio-1301, ¶ 28 (11th Dist.). "That notice, however, 'to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that the [contemnor] has reasonable opportunity to prepare for *the specific issues presented*.'" (Emphasis sic.) *Id.*, quoting *Sassya* at ¶ 28.

{¶ 22} Here, Jones received sufficient notice of the medical bills that he failed to pay and for which the trial court held him in contempt to satisfy the requirements of due process. Angotti served Jones with her amended motion to show cause, which detailed

9.

the reasons for the contempt proceedings. Then, through the discovery process, Jones received all the documents detailing the bills at issue. Jones does not claim that any bills were sprung upon him for the first time at the hearing. Thus, Jones had adequate notice of the facts and specific issues that were to be litigated at the hearing such that his due process rights were not violated.

{¶ 23} Alternatively, Jones argues that the trial court erred when it allowed exhibits of medical expenses into evidence where there was no proof of payment shown by Angotti. He acknowledges, however, that Angotti testified that she paid the amounts owed that were represented by the various bills or explanation of benefits. Thus, the record does contain proof of payment through Angotti's testimony.

{¶ 24} Therefore, the trial court did not abuse its discretion when it found Jones in contempt for failing to pay $20,051.75 in medical expenses and $1,738.14 in school fees.

{¶ 25} Accordingly, Jones's second assignment of error is not well-taken.

### C. Purge Conditions

{¶ 26} Finally, in his first assignment of error, Jones argues that the trial court abused its discretion in ordering him to pay $27,534.89 within six months as his purge condition for contempt.

{¶ 27} "[A] sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt." *Burchett v. Miller*, 123 Ohio App.3d 550, 552 (6th Dist. 1997). "The trial court abuses its discretion in ordering purge conditions that are unreasonable or where compliance is impossible." *Id.*, citing *In re Purola*, 73 Ohio App.3d 306, 313 (3d Dist. 1991). "The party who is in contempt bears the burden of

10.

presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy." *Marx v. Marx*, 2003-Ohio-3536, ¶ 22 (8th Dist.), citing *Szymczak v. Szymczak*, 136 Ohio App.3d 706, 713 (8th Dist. 2000). "The determination of whether a particular purge condition is unreasonable or impossible varies on a case-by-case basis." *Vaughn v. Vaughn*, 2022-Ohio-1805, ¶ 38 (12th Dist.), quoting *Schuman v. Cranford*, 2003-Ohio-2117, ¶ 11 (4th Dist.).

{¶ 28} The hearing testimony established that Jones earned $81,000 in 2022, and his total household income for that year was $211,000. Jones argues that his wife's income should be irrelevant for purposes of determining his ability to satisfy the purge condition. Without deciding the issue, for this analysis, this court will consider only his income of $81,000. Even using that amount, Jones has not demonstrated that the trial court's purge condition was unreasonable or impossible to satisfy. In this case, Jones has been aware of the possibility that he would be required to pay his portion of his children's medical expenses since September 2020, at the latest, when he was served with the motion to show cause. Thus, he had nearly three years to plan for this contingency. Moreover, the trial court gave Jones ample time of six months to secure the ability to satisfy the purge condition through a loan or other means if he did not have the funds at hand. *See Vaughn* at ¶ 39 (purge condition to pay $9,000 in 60 days and $34,500 over a period of three years not unreasonable where husband "received more than enough money following his divorce from Wife to make these payments in the timeframe specified by the domestic relations court had Husband not continued doing everything in

11.

his power to avoid actually doing so.").  Therefore, the trial court did not abuse its discretion when it directed Jones to pay $27,534.89 within six months as his purge condition.

{¶ 29} Accordingly, Jones's first assignment of error is not well-taken.

### IV. Conclusion

{¶ 30} For the foregoing reasons, the judgment of the Erie County Court of Common Pleas, Domestic Relations Division, is affirmed.  Jones is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.