[Cite as *Veller v. K.B.*, 2025-Ohio-687.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Giselle Veller, Administrator of the
Estate of Ashton Copeland, et al.

Court of Appeals No.  WD-24-026

Appellees

Trial Court No. 2022 CV 0320

v.

K.B., a minor, et al.

**DECISION AND JUDGMENT**

Defendants

Decided: February 28, 2025

[Wood County Board of
Commissioners – Appellant]

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
Linda F. Holmes, and Joyce Nowak, assistant prosecuting
Attorneys, and Teresa L. Grigsby and Jennifer A. McHugh,
For appellant, Wood County Board of Commissioners.

Anthony J. Glase, for appellees.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, the Wood County Board of Commissioners, appeals the April 17,

2024 judgment of the Wood County Court of Common Pleas denying its motion to

dismiss the third amended complaint filed by appellee, Giselle Veller, individually and as

administrator of the estate of Ashton Copeland.  Because Veller failed to sufficiently plead some of her claims, we affirm in part and reverse in part.

## I. Background and Facts

{¶ 2} This case arose from a fatal car accident in which K.B., who was 16 years old, was the driver, and Copeland, who was 15 years old, was the front-seat passenger and victim.  Veller, Copeland's mother, filed this lawsuit against K.B., his guardian, and numerous entities.  This appeal concerns only one of the defendants, the Wood County Board of Commissioners.

{¶ 3} According to Veller's third amended complaint, Copeland, her 15-year-old son, was killed in a single-vehicle accident on September 25, 2021.  She alleged that K.B. was driving a Chevrolet Cruze eastbound on King Road in the village of Haskins, which is located in Middleton Township, Wood County, Ohio.  When K.B. drove over a set of railroad tracks, he failed to maintain control of the vehicle, drove off the right side of the road "at a high rate of speed . . .[,]" hit a utility pole, and "crashed into a roadside ditch." Copeland was K.B.'s front-seat passenger.  He died at the scene of the accident as a result of blunt force trauma before he received any emergency medical care.  The Wood County Sheriff's Department found K.B. at fault for the accident and issued him a citation.

{¶ 4} Veller also alleged that "[t]he road and surrounding conditions in Middleton Township, Village of Haskins, and Wood County were dangerous and/or defective[, which] caused or contributed to the accident and death."  Specifically, she claimed that seven "dangerous land conditions and/or hazards and/or nuisance[s] that caused and/or

2.

contributed to Ashton Copeland's death . . ." existed at or near the site of the crash, including

> the utility pole immediately next to the road, the road ingress/egress/slope to the railroad tracks that created a "ramp", the lack of signage and/or clear view of the railroad tracks, the unnecessary steep embankment (ditch) immediately next to the road (without a guardrail), the dangerous terrain embedding the railroad tracks, the lack or required/mandatory traffic devices, and the excessive posted speed limit.

Veller claimed that the board was responsible for each of these defects, and that some of the defects are present on other roads in the county with ramped grade crossings, which violates state law. Because there had been several accidents on King Road and near the railroad tracks in the "recent past," Veller alleged that the board knew or should have known about the dangerous conditions, and that the conditions would cause severe injury and death, but it intentionally or negligently ignored or failed to address them, failed to provide mandatory traffic-control devices, and failed to keep King Road in repair. From all of these issues, the board knew or should have known "that it was not possible to drive down King Road in a safe manner" and that the road posed "unreasonable risks to new drivers."

{¶ 5} Additionally, Veller claimed that the dangerous conditions near the accident site exist throughout Wood County and, despite knowing about them, the board consciously disregarded the dangers, which created unreasonable risks to new drivers, including K.B., and caused Copeland's death. Consequently, the board's actions, along with the other defendants' actions, were the direct and proximate cause of Copeland's death.

3.

{¶ 6} Based on these facts, Veller alleged one count each of negligence, recklessness, and premises liability based on the commissioners' failure to keep King Road in repair, provide mandatory traffic-control devices, and remediate known hazards (count two); wrongful death and survival claims based on negligence due to the dangerous land and road conditions (count three); spoliation of evidence for removing the utility pole immediately after the accident knowing that it would be the subject of criminal or civil lawsuits (count four); and intentional and negligent infliction of emotional distress (count five).[1]  She also included a count asking for a permanent injunction to remediate the "dangerous road condition and/or public nuisance" on King Road and anywhere else similar conditions exist in Wood County (count six).  Her final claim (count seven) alleged, in its entirety, that the facts in the complaint "through notice pleading, amount to other related causes of action, including, but not limited to, vicarious liability, loss of consortium, recklessness, bad faith, [and] other violation of other State laws."

{¶ 7} The commissioners filed a Civ.R. 12(B)(6) motion to dismiss Veller's complaint.  In it, they made four arguments in favor of dismissing the board from the case:  (1) the complaint against it was time barred; (2) it did not have statutory duties to install or maintain a guardrail at the accident site, generally maintain roads or railroad crossings, or ensure "safe" roads and land; (3) based on information that was not in Veller's complaint, it was entitled to political subdivision immunity under R.C. Ch. 2744;

---

[1] Count one of the complaint alleged claims only against K.B. and his guardian.

4.

and (4) Veller's request for a permanent injunction was a remedy and could not exist as a standalone claim.

{¶ 8} In response, Veller argued that (1) her claims were not time barred; (2) she had stated valid claims against the board and was entitled to conduct discovery to determine exactly which entity was responsible for the land and road conditions at the accident site and could correct the defects that she alleged existed at railroad crossings throughout the county—something she had not yet been able to do because it appeared that several entities had overlapping statutory duties in this regard; (3) her complaint alleged valid claims against the board because King Road is a public road in Wood County, so it falls within the commissioners' jurisdiction, and it had not been established in the case that King Road was *not* a county road; (4) her request for injunctive relief was valid under Ohio law, the board could provide the type of relief she was seeking, and the commissioners' motion should be denied as a matter of public policy; (5) the board was not entitled to immunity because the complaint alleged that it had negligently failed to keep King Road in repair, so the immunity exception in R.C. 2744.02(B)(3) applied; (6) the board was not entitled to immunity for discretionary planning powers under R.C. 2744.03(A)(3) because it failed to provide mandatory signs, road markings, and safety equipment; and (7) the board was not entitled to immunity under R.C. 2744.03(A)(5) because its failure to use county resources to correct dangerous road conditions was reckless.

5.

{¶ 9} In their reply, the commissioners reiterated that the statute of limitations had run on Veller's claims and the complaint did not relate back to her original filing. Regarding immunity, the commissioners argued that the complaint did not sufficiently plead facts showing that they failed to install a traffic device mandated by the Ohio Manual of Uniform Traffic Control Devices ("traffic manual"), which is necessary to show that the immunity exception in R.C. 2744.02(B)(3), relating to keeping King Road in repair, applied because they failed to keep a road in repair by not installing a traffic-control device. And because Veller could not overcome the board's immunity, the trial court did not need to reach the question of whether its immunity could be reinstated under R.C. 2744.03(A)(3). The commissioners also argued that Veller failed to allege that the board had any duty to repair King Road and without a duty, it could not have acted negligently. Finally, regarding Veller's request for injunctive relief, the commissioners pointed out that she did not offer any response to the merits of their argument and reiterated that an injunction is a form of relief, not a standalone claim.

{¶ 10} The trial court denied the commissioners' motion. In its decision, the court first found that the complaint was not time barred.

{¶ 11} Next, the court found that many of the commissioners' arguments "hinge primarily on whether [King Road] is a 'county road[,]'" but Veller's complaint did not "conclusively designate the type of road involved, . . ." so it did not "establish for purposes of the Commissioners' Motion to Dismiss that King Road is not or cannot be

6.

considered a 'county road.'" Because of that, the court found that the commissioners were unable to show that Veller could prove no set of facts entitling her to relief.

{¶ 12} Regarding the board's political-subdivision immunity, the court found that Veller's complaint "satisfied the requisites of notice pleading by apprising the Commissioners of the nature of the claims asserted and that an exception to immunity may apply[,]" so "the Court cannot say that [Veller] can prove no set of facts establishing an exception to immunity . . . ."

{¶ 13} Finally, the court rejected the commissioners' request to dismiss Veller's permanent injunction count, finding that "while it is true that generally injunctive relief is a remedy rather than a cause of action, the Court cannot say from the Third Amended Complaint alone that such relief is unavailable to [Veller]."

{¶ 14} The commissioners now appeal, raising two assignments of error:

> 1. The Trial Court erred in failing to dismiss the claims against the Wood County Board of Commissioners on the Board's Ohio Civ. R. 12(B)(6) Motion and in failing to apply the Board's statutory entitlement to immunity under Ohio Rev. Code §2744.02(A).

> 2. The Trial Court erred in determining that the absence of an allegation in Plaintiff's Complaint (one which is essential to the triggering an immunity *exception*) required denial of the Commissioners' Motion to Dismiss. This ruling wrongly inverted the parties' respective pleading burdens in a case involving political subdivision tort immunity under Ohio Rev. Code Chapter 2744.

## II. Law and Analysis

### A. The parties' arguments

{¶ 15} In their brief, the commissioners argue that the trial court erred by denying their motion to dismiss because Veller's third amended complaint does not allege facts

7.

that, if true, trigger an immunity exception in R.C. 2744.02(B). Specifically, they focus on the immunity exception in R.C. 2744.02(B)(3), which states in relevant part that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads . . . ." They argue that the board is only legally responsible for maintaining "county roads"; Veller did not allege that King Road is a county road, so she did not show that the board owed a duty to keep King Road in repair, install guardrails along the embankment on King Road, or remove obstructions from King Road; and without a duty, the board could not have been negligent.

{¶ 16} In response, Veller argues that she sufficiently pleaded facts showing that the immunity exception applies because she alleged that King Road did not have required warning signs and pavement markings, and the absence of those meant that the road was not "in repair." She also argues that she pleaded facts showing that the immunity exception in R.C. 2744.02(B)(5), which relates to liability for guardrails along certain embankments connected to county roads, applies. Although she did not "use[] certain 'magic words'" in her third amended complaint, she was not required to do so, and when the allegations in her complaint are construed liberally, her claims are sufficient to survive a Civ.R. 12(B)(6) motion. Finally, she argues that she properly alleged a cause of action for injunctive relief against the board and immunity does not apply to that claim.

{¶ 17} In their reply, the commissioners contend that Veller has asserted legal conclusions, not factual allegations, which are insufficient to survive a motion to dismiss.

8.

Beyond that, they contend that Veller's claim that King Road was missing "required" warnings and pavement markings is insufficient to show that these are traffic-control devices mandated by the traffic manual, which is necessary for a traffic-control device to be considered a "public road." They also point out that Veller did not argue the applicability of the R.C. 2744.02(B)(5) exception in the trial court, and she is not permitted to raise it for the first time on appeal. If we do consider her (B)(5) argument, the commissioners again argue that she has failed to plead facts showing that King Road is a county road, which is necessary for the board to be liable under that exception. Finally, the commissioners argue that an injunction is a remedy, not an independent claim for relief; the board has not committed any wrongful acts that would entitle Veller to injunctive relief; and Veller has an adequate remedy through the availability of money damages, so she is not entitled to an injunction.

## B. Civ.R. 12(B)(6) standard

{¶ 18} We review a trial court's decision to dismiss a complaint under Civ.R. 12(B)(6) de novo. *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5. To dismiss a complaint for failure to state a claim, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975). Put another way, "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion

9.

to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). We cannot consider allegations or evidence from outside of the complaint in making this determination. *Buckley v. Croghan Colonial Bank*, 2022-Ohio-3684, ¶ 16 (6th Dist.), citing *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997).

{¶ 19} In reviewing a Civ.R. 12(B)(6) motion, we presume that the complaint's factual allegations are true and make all reasonable inferences in the nonmoving party's favor. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). Although we "assume the facts alleged in the complaint are true, we do not assume the legal conclusions alleged to be drawn from those facts are also true and disregard any unsupported conclusions included among the facts alleged in the complaint." *STE Invests., LLC v. Macprep, Ltd.*, 2022-Ohio-2614, ¶ 14 (6th Dist.).

{¶ 20} Ohio is a notice-pleading state. *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, 2021-Ohio-4096, ¶ 10. This means that a plaintiff is not expected to plead a claim with particularity outside of a few specific circumstances. *Id.* Instead, a "short and plain statement of the claim" is usually sufficient. *Id.*, citing Civ.R. 8(A). Notice pleading is designed to "simplify statements of the relief demanded . . . to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto." (Internal quotations omitted.) *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13, citing *Anderson v. BancOhio Natl. Bank*, 1985 WL 8844, *1 (1st Dist. Nov. 27, 1985).

10.

**{¶ 21}** Because that is the case, a complaint is not fatally defective "simply because it does not set forth each element of a cause of action 'with crystalline specificity.'" *Bethel Oil & Gas, LLC v. Redbird Dev., LLC*, 2024-Ohio-5285, ¶ 39 (4th Dist.), quoting *Border City S. & L. Assn. v. Moan*, 15 Ohio St.3d 65, 66 (1984). Indeed, "a pleader is ordinarily not required to allege in the complaint every fact he or she intends to prove . . . ." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 549 (1992), citing *York* at 144-145. Instead, the complaint must "'contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Schlenker Ents., L.P. v. Reese*, 2010-Ohio-5308, ¶ 29 (3d Dist.), quoting *Fancher v. Fancher*, 8 Ohio App.3d 79, 83 (1st Dist. 1982). Consequently, "'as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 29, quoting *York* at 145. But "neither the defendants nor the court is required to research or discover every possible legal claim that may be supported by the facts." *Kramer v. Angel's Path, LLC*, 2007-Ohio-7099, ¶ 14 (6th Dist.).

### C. Political-subdivision immunity

**{¶ 22}** Political subdivisions in Ohio are generally immune from civil liability under R.C. 2744.02(A)(1). Specifically, the statute states that "[e]xcept as provided in [R.C. 2744.02(B)], a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the

11.

political subdivision . . . in connection with a governmental or proprietary function." *Id.* The maintenance and repair of roads is a governmental function. R.C. 2744.01(C)(2)(e). One of the exceptions to the general grant of immunity makes political subdivisions "liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads . . . ." R.C. 2744.02(B)(3).[2] When an exception to immunity applies, there are circumstances, found in R.C. 2744.03(A), that can reinstate the political subdivision's immunity.

{¶ 23} Determining whether a political subdivision is immune from liability involves a three-tiered analysis. *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 15. The first tier is "the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." (Internal quotations omitted.) *Id.* The second tier involves determining if any of the five exceptions in R.C. 2744.02(B) apply "to expose the political subdivision to liability." (Internal quotations

---

[2] In her brief, Veller argues that the exception to immunity in R.C. 2744.02(B)(5), which cites to R.C. 5591.37 to impose liability for a board of county commissioners' negligent failure to put guardrails along certain embankments that are immediately connected to county roads, also applies to remove the board's immunity in this case. However, as the commissioners point out, Veller did not make any arguments related to this exception in the trial court, and arguments a party raises for the first time on appeal are generally barred. *Angotti v. Jones*, 2024-Ohio-3222, ¶ 16 (6th Dist.), citing *Dana Ltd. v. TACS Automation, LLC*, 2021-Ohio-2555, ¶ 50 (6th Dist.); *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 30 ("[A]n appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts . . . ."). Because Veller did not argue this exception in the trial court, she has waived it on appeal, and we will not consider it. *Angotti* at ¶ 16.

12.

omitted.) *Id.* The plaintiff has the burden of demonstrating that an exception to the general grant of immunity applies. *Nonprasit v. Ohio Teaching Family Assn.,* 2022-Ohio-3685, ¶ 43 (6th Dist.). If an exception applies, the third tier requires the court to determine if immunity may be reinstated under one of the defenses in R.C. 2744.03. *Pelletier* at ¶ 15.

**D. The board is entitled to partial dismissal of Veller's third amended complaint.**

{¶ 24} Turning to the commissioners' arguments, they contend that the trial court erred by "failing to apply the Board's statutory entitlement to immunity under . . ." R.C. 2744.02(A) and, consequently, failing to grant their motion to dismiss Veller's complaint. They also argue that Veller failed to allege that King Road is a county road, which is a fact necessary to overcome the board's presumed immunity. Our review of the complaint and the case law shows that the trial court correctly denied the board's motion to dismiss count two, count three, and the loss of consortium claim in count seven, but it should have granted the board's motion to dismiss the remaining claims.

**1. The trial court properly denied the board's motion to dismiss counts two and three of Veller's third amended complaint.**

{¶ 25} The claims in counts two and three of Veller's complaint sound in negligence. To plead a negligence claim, Veller was required to allege facts showing that the board owed a duty to Copeland, it breached that duty, and the breach proximately caused Copeland's injuries and death. *See Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 2004-Ohio-2629, ¶ 14; *Mussivand v. David*, 45

13.

Ohio St.3d 314, 318 (1989). At this point, Veller has alleged sufficient facts to support her negligence-based claims.

{¶ 26} Ohio has three types of roads: state roads, county roads, and township roads. R.C. 5535.01. State roads are defined as "the roads and highways on the state highway system." R.C. 5535.01(A). County roads are all roads that are "established as a part of the county system of roads as provided in [R.C.] 5541.01 to 5541.03 . . . ." R.C. 5535.01(B). Township roads "include all public highways other than state or county roads." R.C. 5535.01(C). Boards of county commissioners are responsible for maintaining county roads. R.C. 5535.01(B), (C); R.C. 5535.08(A) ("The state, county, and township shall each maintain its roads, as designated in [R.C.] 5535.01 . . . .").

{¶ 27} The commissioners rely on these statutes to argue that the board does not have a duty to maintain any roads that are not county roads, and based on other information in the trial court record, they arrive at the conclusion that King Road is not a county road, so the board does not have a duty to maintain it. The problem with the commissioners' logic is that it relies on information from outside the complaint, which a court cannot use when deciding a Civ.R. 12(B)(6) motion. *Buckley*, 2022-Ohio-3684, at ¶ 16 (6th Dist.). According to their brief, the only way the commissioners know that King Road is not a county road is from information in Middleton's motion for summary judgment, one of Veller's motions to amend the complaint, and a deposition filed in the trial court. None of this can properly be considered in a motion to dismiss a complaint for failure to state a claim, and we must treat this information as if it does not exist. If the

14.

commissioners wanted the trial court (and this court) to consider information outside of the four corners of Veller's third amended complaint, they were required to file a motion for summary judgment under Civ.R. 56, *not* a motion to dismiss under Civ.R. 12(B)(6).

{¶ 28} Another problem with the commissioners' arguments is that they ignore the fact that political-subdivision immunity is an affirmative defense. *Supportive Solutions, LLC v. Electronic Classroom of Tomorrow*, 2013-Ohio-2410, ¶ 17. Affirmative defenses are difficult to raise successfully in a Civ.R. 12(B)(6) motion because proving them generally involves information outside of the pleadings. *Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, ¶ 21 (10th Dist.). As Chief Justice Kennedy has recognized,

> Ohio's appellate courts have long recognized the difficulty of successfully asserting an affirmative defense in a Civ.R. 12(B)(6) motion to dismiss. Because affirmative defenses typically rely on matters outside the complaint, they normally cannot be raised successfully in a Civ.R. 12(B)(6) motion. . . . [T]he better procedure is to address affirmative defenses by way of a motion for summary judgment that will allow introduction of additional facts beyond the complaint[.]

(Internal quotations omitted.) *Schmitz v. Natl. Collegiate Athletic Assn.*, 2018-Ohio-4391, ¶ 41 (Kennedy, J., concurring), citing *Main v. Lima*, 2015-Ohio-2572, ¶ 14 (3d Dist.) (lead opinion); and *Savoy v. Univ. of Akron*, 2012-Ohio-1962, ¶ 6-7 (10th Dist.).

{¶ 29} A trial court can grant a Civ.R. 12(B)(6) motion based on an affirmative defense only "when the existence of the affirmative defense is obvious from the face of the complaint." (Internal quotations omitted.) *Dart v. Katz*, 2021-Ohio-1429, ¶ 20 (2d Dist.), citing *Reasoner v. City of Columbus*, 2003-Ohio-670, ¶ 12 (10th Dist.); and *Mankins v. Paxton*, 142 Ohio App.3d 1, 9 (10th Dist. 2001); *Keller v. State*, 1998 WL 290228, *2 (6th Dist. May 8, 1998). However, "a court must exercise caution because

15.

complaints need not anticipate and attempt to plead around defenses." (Internal quotations omitted.) *Cristino* at ¶ 21, citing *Savoy* at ¶ 8; *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004); and *Owner Operator Indep. Drivers Assn., Inc. v. Comerica Bank*, 540 F.Supp.2d 925, 929 (S.D.Ohio 2008). In other words, "[t]here is no 'heightened pleading requirement' that would require [Veller] to allege specific exceptions to immunity when bringing suit against a political subdivision." *Carswell v. City of Akron*, 2019-Ohio-4444, ¶ 14 (9th Dist.). As the Supreme Court explained in a case involving a defense to immunity under R.C. 2744.03, at the pleading stage, a complaint need only "rais[e] the *possibility* that the exception to [the defendants'] statutory immunity . . . might apply." (Emphasis added.) *Maternal Grandmother*, 2021-Ohio-4096, at ¶ 15.

{¶ 30} Here, as we will discuss, when we construe the allegations in the complaint in Veller's favor and do not consider any outside information, she has met her burden of pleading short, plain statements alleging claims of negligence, wrongful death, and survival. She was not required to "plead around" the possibility that the board would raise the defense of political-subdivision immunity. *Cristino* at ¶ 21. As one judge has put it, "[r]equiring [a plaintiff] to affirmatively demonstrate an exception to immunity at this stage of the proceedings would be tantamount to overcoming a motion for summary judgment at the pleadings stage." *Ohio Bell Tel. Co. v. Leon Riley, Inc.*, 2010-Ohio-5371, ¶ 35 (8th Dist.) (Kilbane, J., dissenting). This would defeat the purpose of a Civ.R. 12(B)(6) motion, which is solely to test the sufficiency of the complaint—i.e., it is not

16.

related to the *merits* of the complaint. *Slife v. Kundtz Props., Inc.*, 40 Ohio App.2d 179 (8th Dist. 1974), paragraphs one and four of the syllabus (Civil Rule 12(B)(6) motions "test the sufficiency of the complaint and are not to be used to terminate litigation on its merits. . . . Whether the plaintiff can prevail is a matter properly determined by the proof and not by the pleadings."); *Fletcher v. Univ. Hosps. of Cleveland*, 2008-Ohio-5379, ¶ 17, quoting *Collins v. Natl. City Bank*, 2003-Ohio-6893, ¶ 51 (2d Dist.) ("'An order of dismissal entered pursuant to Civ.R. 12(B)(6) is an adjudication on the merits of the issue the rule presents, which is whether a pleading put before the court states a claim for relief. It does not adjudicate the merits of the claim itself . . . .'").

{¶ 31} As it stands, based on Veller's allegations that King Road is located in Wood County and that the defendants collectively "maintained ownership and control of the subject property . . .[,]" we can reasonably infer that King Road is a county road that the board is statutorily responsible for maintaining. This means that the board owed a duty to Copeland to maintain King Road. *Ray v. City of Warren*, 2019-Ohio-4654, ¶ 33 (11th Dist.) (A board of county commissioners "has a legal duty to adequately maintain any street or highway that lies within its system of roads."). Veller's "'brief and sketchy allegations of fact'" regarding the board's duty are sufficient to survive a Civ.R. 12(B)(6) motion. *Ohio Neighborhood Preservation Assn. v. Alaura*, 2023-Ohio-1281, ¶ 10 (10th Dist.), quoting *York*, 60 Ohio St.3d at 146 (Moyer, C.J., concurring).

{¶ 32} Similarly, Veller sufficiently alleged that the board breached its duty to maintain King Road by claiming that King Road "lack[ed] required/mandatory traffic

17.

devices . . . ." Generally, a "public road" does not include traffic-control devices. R.C. 2744.01(H) ("'Public roads' means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include . . . traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices."). But, when the traffic-control device is "mandated by the Ohio manual of uniform traffic control devices[,]" it is considered a "public road" and falls within the immunity exception in R.C. 2744.02(B)(3). R.C. 2744.01(H); *see also Bibler v. Stevenson*, 2016-Ohio-8449, ¶ 15-17 (plurality opinion) (traffic-control devices that are required under the Revised Code, but not mandated by the traffic manual, fall within the definition of "public road").

{¶ 33} Although the commissioners complain that "the Third Amended Complaint makes no allegation that some traffic control device mandated by the Ohio manual of uniform traffic control devices was missing in this case[,]" Veller was not required to plead every element of her claims "'with crystalline specificity.'" *Bethel Oil & Gas*, 2024-Ohio-5285, at ¶ 39 (4th Dist.), quoting *Border City S. & L.*, 15 Ohio St.3d at 66. The "'brief and sketchy allegation[]'" that "required/mandatory" traffic-control devices were missing from King Road is enough to put the board on notice of the way that Veller claims it breached its duty to maintain King Road. *Ohio Neighborhood Preservation Assn.* at ¶ 10, quoting *York* at 146 (Moyer, C.J., concurring). The fact that the complaint does not mention the traffic manual by name is not dispositive.

**{¶ 34}** Finally, Veller has sufficiently alleged that King Road was not "in repair" within the meaning of R.C. 2744.02(B)(3) by alleging that King Road is missing *mandatory* traffic-control devices. *See Shope v. Portsmouth*, 2012-Ohio-1605, ¶ 26 (4th Dist.).[3] The Ohio Supreme Court has explicitly held that "[w]here the installation of traffic control devices by a municipality is *discretionary* pursuant to the [traffic manual], the municipality is immune from tort liability for damages allegedly resulting from the absence of such devices." (Emphasis added.) *Winwood v. City of Dayton*, 37 Ohio St.3d 282 (1988), syllabus. But it has not made the same pronouncement related to the installation of *mandatory* traffic-control devices, which local authorities are required by R.C. 4511.11(A) to "place and maintain." This makes sense because a political subdivision's immunity under R.C. 2744.02(A) can be restored—despite an exception to immunity in R.C. 2744.02(B) applying—when the underlying action involves the exercise of discretion. R.C. 2744.03(A)(3), (5). Political subdivisions have discretion to place traffic-control devices that are not mandated by the traffic manual, but do not have discretion regarding the placement of mandatory traffic-control devices.

**{¶ 35}** The commissioners cite to *Cerri v. Clemson Excavating, Inc.*, 2019-Ohio-1161 (11th Dist.), and *Bartchak v. Columbia Twp.*, 2018-Ohio-2991 (9th Dist.), to

---

[3] We recognize that the Ohio Supreme Court has determined that whether an *existing* mandatory traffic-control device is "in repair depends on its physical condition, . . ." i.e., whether the sign itself is "in good or sound condition" or "otherwise deteriorated or disassembled." *Pelletier*, 2018-Ohio-2121, at ¶ 20-21. But applying this definition to a mandatory traffic-control device that *does not exist* is illogical; a nonexistent sign does not have a "physical condition" that would demonstrate whether it is "in good or sound condition" or "otherwise deteriorated or disassembled."

19.

support their argument that "lack of signage" does not equate to a "failure[] to keep a public road 'in repair.'" Those cases are distinguishable. First, nothing in *Cerri* (an appeal from a summary judgment decision) indicates that the missing traffic-control devices were mandatory under the traffic manual, and the cases the Eleventh District cites to support its conclusion that sign placement does not fall under "in repair" as it is used in R.C. 2744.02(B)(3) either involve traffic-control devices that were actually in place or the failure to place discretionary traffic-control devices. *Id.* at ¶ 17.

{¶ 36} Additionally, although *Bartchak* (another summary judgment case) involves remarkably similar facts and allegations, as Veller points out, the Ninth District decided the signage issue based on lack of causation. *Id.* at ¶ 16-19. The court found that the missing mandatory traffic-control devices near the railroad crossing did not cause the accident because the surviving passenger testified that the teenagers set out to jump their car over the railroad tracks, so the presence of the mandatory signs would not have prevented the accident, and the plaintiffs' expert opined that a *discretionary* traffic-control device, had it been in place, might have prevented the teens from intentionally jumping the car over the tracks. *Id.* at ¶ 18-19. The court concluded that "the teens' parents did not demonstrate that there is a genuine issue of material fact as to whether the absence of *mandatory* traffic-control devices contributed to the teen driver's loss of control. The trial court, therefore, incorrectly denied summary judgment . . . on the parents['] 'in repair' claim." (Emphasis added.) *Id.* at ¶ 19. That is not the case here, where Veller has pleaded both that the missing traffic-control devices were mandatory

20.

and that the lack of signage caused Copeland's death, which is all that is required at this stage of the case.

{¶ 37} Ultimately, the merits of Veller's allegations—i.e., whether they are true—is not currently at issue, and because there is a set of facts consistent with Veller's complaint that would allow her to recover damages from the board for a breach of its duty to maintain King Road, her claims sounding in negligence cannot be dismissed under Civ.R. 12(B)(6). *York* at 144-145 ("[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss."); *see also Bethel Oil & Gas*, 2024-Ohio-5285, at ¶ 36 (4th Dist.), quoting *Bono v. McCutcheon*, 2005-Ohio-299, ¶ 8 (2nd Dist.) (A court "may not grant a motion to dismiss for failure to state a claim simply because the court 'doubts the plaintiff will prevail.'").

{¶ 38} In summary, as it relates to counts two and three, Veller did all that she was required to do under Civ.R. 8(A) by pleading a "short and plain statement" of each "*claim*" against the board; she was not required to *also* plead facts to counter each possible defense the defendants might raise. The allegations in Veller's third amended complaint are sufficient to put the board on notice of the claims against it in counts two and three and survive a motion to dismiss. Whether these claims have merit is an issue for a summary-judgment motion or a trial, not a Civ.R. 12(B)(6) motion.

21.

{¶ 39} Because Veller sufficiently pleaded her claims in counts two and three, and was not required to rebut possible defenses, the trial court correctly denied the commissioners' motion to dismiss those counts of Veller's third amended complaint.

### 2. The board is entitled to dismissal of counts four, five, and six of Veller's third amended complaint.

{¶ 40} Counts four, five, and six of Veller's complaint allege claims that cannot survive the board's Civ.R. 12(B)(6) motion. We address each in turn.

### a. Spoliation of evidence and intentional infliction of emotional distress

{¶ 41} In count four, Veller alleges that "Wood County" removed the utility pole that K.B. hit "immediately after" the accident, despite knowing that there would be an investigation and legal proceedings. She also claims that the pole was "evidence of a dangerous land condition" and its removal prevented her from being able to "investigate or observe the dangerous land condition of the utility pole after the accident." In count five of the complaint, Veller alleges that the board's "actions and inactions were both intentional and negligent which caused severe emotional distress." These claims must be dismissed because there are no exceptions to political-subdivision immunity for the intentional torts of spoliation and intentional infliction of emotional distress. *Hubbard v. Canton City School Bd. of Edn.*, 2002-Ohio-6718, ¶ 8, citing *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450, 452 (1994) (intentional infliction of emotional distress); *Fried v. Friends of Breakthrough Schools*, 2020-Ohio-4215, ¶ 23-24 (8th Dist.) (spoliation and intentional infliction of emotional distress); *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, ¶ 49 (1st Dist.) (spoliation).

22.

### b. Negligent infliction of emotional distress

{¶ 42} Veller also alleges negligent infliction of emotional distress in count five of her complaint. She refers to "Plaintiff's" emotional distress but does not clarify whether "Plaintiff" is Veller as administrator of Copeland's estate or Veller on her own behalf. Either way, count five fails to state a claim upon which relief can be granted.

{¶ 43} "In the absence of statutory provision therefor, Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." *High v. Howard*, 64 Ohio St.3d 82, 85-86 (1992), *overruled on other grounds, Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244 (1993). Specifically, a negligent infliction of emotional distress claim requires a plaintiff to show that "(1) *the plaintiff was a bystander*, (2) the plaintiff reasonably appreciated the peril that took place, whether or not the victim suffered actual physical harm, and (3) the plaintiff suffered serious emotional distress as a result of this cognizance or fear of peril." (Emphasis added.) *Walker v. Firelands Community Hosp.*, 2007-Ohio-871, ¶ 59 (6th Dist.), citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 80 (1983). There is an exception to the requirement that the person claiming emotional injuries must see the event when the claim is based on the mishandling of a dead body. *Id.* at ¶ 44.

{¶ 44} As to Veller individually, the complaint does not allege that she witnessed the accident or feared physical consequences to herself, or that the board mishandled Copeland's body, and "[t]he distress caused from merely learning of another's injury or

23.

death caused by a negligent third party is insufficient to impose liability upon that third party for the emotional distress caused." *Burris v. Estate of Burris*, 1988 WL 37569, *2 (6th Dist. Apr. 15, 1988) (finding that a mother who was not physically near the accident failed to state a claim for negligent infliction of emotional distress based on emotional injury she suffered from learning of her son's death after the accident). Thus, Veller has not stated a personal claim for negligent infliction of emotional distress.

{¶ 45} The complaint also fails to state a claim for negligent infliction of emotional distress on behalf of Copeland's estate because Copeland was not a "bystander" to the accident; he was a victim who was directly involved. Any damages for emotional injuries that Copeland received because of the accident are compensable as part of the estate's negligence claim. *Loudin v. Radiology & Imaging Servs., Inc.*, 2011-Ohio-1817, ¶ 19-20, citing *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 134, fn. 3 (1983) ("Courts have allowed recovery for emotional distress accompanied by the slightest injury. When there is evidence of any injury, no matter how slight, the mental anguish suffered by plaintiff becomes an important element in estimating the damages sustained." (Internal quotations omitted.)).

### c. Injunction

{¶ 46} In count six of her complaint, Veller alleges that (1) the board intentionally, negligently, and recklessly "created a dangerous road condition and/or public nuisance on King Road and similar roadways in Wood County . . ."; (2) the public, "including teenage (new/first-time/early) drivers," cannot appreciate the dangers of driving on King Road

24.

and similar roads, which "directly affects new/teenage driver's [sic] right to travel safely down a public road"; (3) she has "serious safety concerns" for teen drivers and drivers unfamiliar with King Road; and (4) she is "requesting some form of permanent injunction to address the nuisance of these ramp/road grade-crossings along steep embankments without guardrails along King Road and throughout Wood County in order to provide safety to the public and teenage drivers and to avoid any future deaths." This claim must also be dismissed.

{¶ 47} The commissioners argue that count six should be dismissed because an injunction is a remedy, not an independent cause of action. They are correct; in general, injunctive relief is a remedy, not a cause of action. *Carstensen v. Bd. of Trustees of Allen Twp.*, 2024-Ohio-870, ¶ 13 (6th Dist.), citing *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 70 (8th Dist.); and *Bresler v. Rock*, 2018-Ohio-5138, ¶ 45 (10th Dist.).

{¶ 48} This does not end our examination of count six, however, because Civ.R. 8(F) requires us to construe the complaint "to do substantial justice," we must look at the wording of the claim (not just its heading) to see if it complies with the notice pleading standard of Civ.R. 8(A), and we can only dismiss count six under Civ.R. 12(B)(6) if there is no set of facts that would entitle Veller to the relief she is seeking (i.e., a permanent injunction). *Crosby v. Beam*, 47 Ohio St.3d 105, 110 (1989), quoting Staff Note, Civ.R. 8(F) ("The rule '. . . emphasizes the fact that pleadings shall be construed liberally . . . .'" (Ellipses in original.)); *Ogle v. Ohio Power Co.*, 2008-Ohio-7042, ¶ 9 (4th Dist.) ("The object [of notice pleading] is . . . simply to see whether the plaintiffs' wording provides

25.

the defendants with notice of the claim and the opportunity to defend it."); *Kramer*, 2007-Ohio-7099, at ¶ 13 (6th Dist.) ("[T]he labels used in a particular cause of action do not control the nature of the cause of action."); *McKinley*, 2011-Ohio-4432, at ¶ 12.

{¶ 49} As pleaded, count six sounds like a public nuisance claim. A public nuisance is something that unreasonably interferes with a right common to the general public. *Kramer* at ¶ 15. A private individual generally does not have standing to bring a public nuisance claim. *Becker v. Cardinal Health, Inc.*, 2021-Ohio-3804, ¶ 16 (10th Dist.). There is an exception to this rule if the person can show that they have suffered an injury not incurred by the general public, and that this special injury is different in *type*— not just different in *degree*—from the harm suffered by the general public exercising the same right. *Id.*, citing *Sommer v. Ohio Dept. of Transp.*, 2014-Ohio-5663, ¶ 29 (10th Dist.).

{¶ 50} In this case, Veller has not pleaded facts showing that the "dangerous road conditions" have unreasonably interfered with a public right. Although she speculates that certain drivers cannot appreciate the danger of King Road (and roads similar to it) and "will certainly suffer injuries or damages while trying to drive and navigate the nuisance . . . [,]" she does not allege any *facts* showing that the road conditions have actually interfered with the *public's* "right to travel safely down a public road" or that the *public* has suffered any injury from the road conditions. Without some facts supporting these elements of count six, Veller has failed to state a claim for public nuisance. *See Lombardo v. Best W. Hotels & Resorts*, 2023-Ohio-2300, ¶ 17 (8th Dist.), quoting

26.

*Maternal Grandmother* at ¶ 29 (DeWine, J., concurring) ("While a party is not normally 'expected to plead a claim with particularity' . . . even Ohio's liberal notice-pleading standard does not permit mere speculation."). Therefore, the trial court should have granted the board's motion to dismiss on this count.

### 3. The board is entitled to partial dismissal of count seven of Veller's third amended complaint.

{¶ 51} Finally, in count seven of her third amended complaint, Veller alleges that the facts in the complaint "through notice pleading, amount to other related causes of action, including, but not limited to, vicarious liability, loss of consortium, recklessness, bad faith, [and] other violation of other State laws." Under the notice pleading requirement of Civ.R. 8(A), a plaintiff is not required to plead the legal theories of recovery that she is relying on or clearly and exactly plead every element of every claim. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 525-526, (1994); *Bethel Oil & Gas*, 2024-Ohio-5285, at ¶ 39 (4th Dist.). Instead, the complaint "must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Strahler v. Vessels*, 2012-Ohio-4170, ¶ 10 (4th Dist.). Our review of the facts in Veller's complaint shows that she stated a claim only regarding loss of consortium.

{¶ 52} To the extent that count seven alleges loss of consortium, the trial court did not err in denying the commissioners' motion to dismiss. A loss of consortium claim is based on the uninjured party's loss of the injured party's "'society, services, . . . and

27.

conjugal affection which includes companionship, comfort, love and solace.'" *Hutchings v. Childress*, 2008-Ohio-4568, ¶ 16, quoting *Clouston v. Remlinger Oldsmobile Cadillac, Inc.*, 22 Ohio St.2d 65 (1970), syllabus. Veller sufficiently alleged that she has lost Copeland's society, services, and affection as a result of the board's negligence, and as we have discussed, the board cannot at this point claim immunity from Veller's negligence claims. Thus, Veller has stated a claim for loss of consortium, and the commissioners are not entitled to have that claim dismissed.

{¶ 53} However, Veller's complaint does not contain facts supporting causes of action for bad faith, recklessness, vicarious liability, or other unspecified violations of state law.

{¶ 54} First, although a political subdivision's bad faith or reckless conduct can be relevant to the immunity defense in R.C. 2744.03(A)(5), we were unable to find any authority for independent causes of action of bad faith or recklessness in this context. *See* R.C. 2744.03(A)(5) (Political-subdivision immunity can be reinstated if the claim "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised . . . in bad faith, or in a . . . reckless manner."); *Scott Fetzer Co. v. Am. Home Assur. Co., Inc.*, 2023-Ohio-3921, ¶ 19, citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272 (1983) (bad faith is an independent tort that arises from the relationship between an insured and insurer); *Temple v. Fence One, Inc.*, 2005-Ohio-6628, ¶ 43 (8th Dist.) (recklessness is not a separate cause of action

28.

outside of cases involving injuries at sporting events). Because these are not independent causes of action, Veller cannot state claims based on them.

**{¶ 55}** Additionally, vicarious liability is inapplicable to this case. "Vicarious liability is a form of indirect legal responsibility that operates to make a principal liable for the acts of its agents." *Harmon v. GZK, Inc.*, 2002 WL 191598, *7 (2d Dist. Feb. 8, 2002). Veller has not alleged that any of the board's agents were involved in this case or named any Doe defendants that might be the board's agents. Without allegations that an agent was acting on the board's behalf, Veller has not sufficiently pleaded any type of vicarious liability claim. *See Auer v. Paliath*, 2014-Ohio-3632, ¶ 27, citing *Comer v. Risko*, 2005-Ohio-4559, ¶ 20-22 ("Vicarious liability by its very terms attaches to the principal through the agent's actions, not through the principal's own actions. . . . [The principal's] direct conduct is irrelevant to a vicarious-liability cause of action.").

**{¶ 56}** Finally, Veller's vague allegation that the board committed an unspecified "other violation of other State laws" is patently insufficient to survive a Civ.R. 12(B)(6) motion to dismiss.

**{¶ 57}** In sum, because Veller's complaint sufficiently alleges a claim for loss of consortium, the trial court correctly denied the board's motion to dismiss that part of count seven. However, because the complaint does not even minimally support separate claims of bad faith, recklessness, vicarious liability, or "violation of other State laws," the trial court erred by denying the commissioners' motion to dismiss count seven as to those claims.

29.

### III. Conclusion

{¶ 58} After carefully considering Veller's third amended complaint, we find that the trial court correctly denied the board's Civ.R. 12(B)(6) motion on count two, count three, and the loss of consortium claim in count seven, but erred by failing to dismiss the remaining claims against the board. As we extensively discussed, the complaint adequately alleges facts that could support a finding that Veller is entitled to relief on the negligence, wrongful death, and survival claims, and she was not required to plead around the possibility that the board would raise the affirmative defense of political-subdivision immunity. Veller's allegations that that King Road is located in Wood County and that the defendants collectively "maintained ownership and control of the subject property . . .[,]" are sufficient to allow a reasonable inference that King Road is a county road that the board is statutorily responsible for maintaining. The fact that the complaint does not specifically and directly allege that King Road is a "county road" is not dispositive. Because of that, we cannot say that the trial court's finding that the complaint "does not conclusively designate the type of road involved, and therefore does not establish . . . that King Road is not or cannot be considered a 'county road'" was prejudicial to the board. For all of these reasons, the board's first assignment of error is well-taken, in part, and its second assignment of error is not well-taken.

{¶ 59} The April 17, 2024 judgment of the Wood County Court of Common Pleas is affirmed in part, reversed in part, and remanded to the trial court. On remand, the trial court shall dismiss all claims against the board except count two, count three, and the loss

30.

of consortium claim in count seven.  Veller and the board are ordered to divide the costs

of this appeal equally under App.R. 24.

Judgment affirmed, in part,<br>reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.         _____
JUDGE

Christine E. Mayle, J.

_____

Myron C. Duhart, J.           JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.